■      THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CARRINGTON TUCKER, Appellant.— HERLIHY, P. J.   Appeal by the defendant from a judgment of conviction of the County Court of Albany County, rendered May 10, 1968, upon a jury verdict of guilty of burglary in the third degree. The defendant was tried pursuant to an indictment of the Albany County Supreme Court Grand Jury for the crimes of burglary in the third degree and grand larceny in the third degree. The bill of particulars amplifying the short form indictment alleged that the defendant and one Coleman entered a certain store in the early morning hours of January 12, 1968 by forcing open a door and took from the premises four television sets. The jury could not agree as to the grand larceny charge, but found the defendant guilty of the burglary charge. Upon the trial it was established that in the early morning hours of January 12, 1968 (about 2:30 or 3:00 A.M.) the front door of Mooradian's Modern Home, a television and appliance store, located in Watervliet was pried open and that four television sets were ascertained to be missing from the premises after such entry. At the time of the burglary, there were five persons, mutual friends, present immediately outside the store premises and it was established that two of these persons forced the door open with a crowbar and entered the premises. The five persons were: defendant; Percy Coleman; James Parker; Gwendolyn (Mary) Anderson; and Mary Taylor. Percy Coleman testified for the People that he was one of the persons who broke into the premises and that the other person who broke in with him was James Parker. Coleman also testified as to the manner in which he and Parker subsequently disposed of the four television sets which he admitted they took from the store. Mary Taylor testified that she observed Coleman and the defendant enter the store and come out with television sets. Gwendolyn Anderson testified that she saw the defendant and Coleman approach the front of the store with a crowbar and then come from the front of the store with television sets to the rear of her car. James Parker was called, but he refused to answer any questions upon the grounds of his constitutional right not to incriminate himself, even though he had previously testified before a Grand Jury as to this case and was granted immunity. The defendant did not testify. From the testimony given by the persons directly involved in the events leading up to the burglary, the jury could have found that either Parker or defendant committed the forced entry, and it rejected Coleman's story by finding defendant guilty. The People produced two additional witnesses (Ronald

Tucker and Joan Rosetti) as to events following the wrongful entry and specifically as to the disposition of the television sets. Ronald Tucker testified that he knew both the defendant and Coleman and that on the day following the burglary, he accompanied Coleman to James Parker's residence and Coleman took three television sets inside. James Parker was the witness's uncle. At this point the District Attorney implied that the witness was testifying inconsistently with a prior statement, but it was subsequently established that there had been no prior "sworn" statement by this witness. (See Code Crim. Pro., § 8-a.) Joan Rosetti testified that she was Coleman's girl friend or fiancee and that Coleman came to her house at about 5:00 A.M. on the morning the crime was committed. She saw him intermittently on that day and on the following morning (Saturday) when she returned home, Coleman was there with four television sets. On Saturday, she was present when defendant, Colemand and Parker met at her house and had a conversation in which they said: "They were going to disperse the smallest T.V. to the boys that extricated the T.V.'s from the car in Watervliet." The three men agreed that each would keep one television set, Coleman's being the television set left in her house. Subsequently, she identified People's Exhibit 4 as being the television set left in her home and this television set had previously been identified by the proprietor of the store burglarized as one missing after the burglary. On cross-examination this witness was asked if Coleman told her where he had been when he came to her house at 5:30 A.M. on Friday (the morning the crime was committed) and she responded: "He told me in the city." She was also questioned by defendant's counsel as to what happened when she returned home the following morning and found Coleman there with four television sets: "Q. And did he then tell you where the television sets came from? A. Yes. Q. And where he had been? A. Yes. Q. Did you say anything to him? A. No." Upon redirect examination the court, over defendant's objections, permitted the District Attorney to elicit everything Coleman had told this witness on Friday and Saturday mornings although it was hearsay, upon the ground that defendant had opened the door in the testimony as noted hereinbefore. The witness testified that on both Friday and Saturday mornings, Coleman told her that Parker did not break or enter the premises, but that he (Coleman) and defendant did the breaking and entering. The People recalled Coleman and asked him as to his indictment and conviction for the crimes at issue in this case. The defendant objected upon the vague ground: "If he is being called to repair some things which he failed to ask the witness at that time, I don't think he should be permitted to do that." The trial court overruled that objection; reserved the defendant's right to make further objections; the defendant made no further objections. When applying the rule that the defendant is presumed innocent until proven guilty beyond a reasonable doubt (Code Crim. Pro., § 389), on the present record, there must be a reversal and new trial. There is little doubt of the defendant's guilt, but because of the admission in evidence of prejudicial testimony and other questionable procedures, it cannot be said that the substantial rights of the defendant were not affected (Code Crim. Pro., § 542). In *People* v. *Marendi* (213 N. Y. 600, 619) the court stated: "If trial by jury is to be maintained, the right of every accused person to be tried in accordance with established forms of law must be respected. If the errors in question had related to matters upon which but one decision, and that adverse to the defendant, could reasonably have been reached, it might be permissible to overlook them; but where prejudicial matter is erroneously received in evidence on a disputed question of fact, its harmful character cannot be determined solely by the mere weight of competent evidence unless we are to resolve ourselves into a jury and, ignoring the finding upon incompetent evidence, sub-

stitute one upon the evidence which we may deem competent." (See, also, *People* v. *Dunn,* 26 A D 2d 381; cf. *People* v. *Pilon,* 30 A D 2d 365, 368.) The closeness of the factual issue presented to the jury is reflected in its inability to agree on a verdict as to the grand larceny charge. The hearsay conversations admitted through the witness Joan Rosetti were inadmissible and were prejudicial as an impeachment of the People's witness Coleman. The door would have been opened to admitting these hearsay conversations if the defendant had attempted to elicit the substance of the conversations, but the questions asked by him were not so designed and were completely neutral as to having a bearing on the defendant's guilt or innocence. (See *People* v. *Schlessel,* 196 N. Y. 476, 480, 481.) The prosecution was using the hearsay statements to show the truth of the assertions, and there was no unavailability of Coleman, the declarant who chose not to implicate the defendant. Pursuant to section 542 of the Code of Criminal Procedure " the court must give judgment, without regard to technical errors or defects as to exceptions which do not affect the substantial rights of the parties ". In the present case, the " weight " of the evidence was neither in favor of the People nor the defendant, the fact of guilt or innocence depending solely upon the intangible factors of credibility. The hearsay evidence improperly admitted herein went directly to the credibility of the People's witness — Coleman. Under such circumstances the error affected a substantial right of the defendant and obviously supported the jury verdict. The trial court in its charge to the jury stated that this conversation was contrary to Coleman's testimony as to defendant's participation in the crime and very clearly permitted the jury to utilize the testimony as a basis for testing credibility. Another aspect of the case bearing upon the substantiality of this error is the reference of the District Attorney to prior statements by the witness Ronald Tucker and the subsequent colloquy which indicated that such statements were inconsistent when in fact there was no prior statement which could be admitted pursuant to section 8-a of the Code of Criminal Procedure. While there was no error committed upon this point, the inference was put before the jury of an inconsistent statement and such a procedure should not be condoned when the People realize or should realize that there is a substantial question as to the admissability of the prior statements. Also, while no proper objection was taken to the questioning of Percy Coleman upon recall by the People, we would note that the People could not properly thereby impeach this witness and since in retrospect it appears that the evidence capitalized upon and dramatized by the District Attorney was inadmissible, the use thereof in his summation was improper and, under the circumstances, prejudicial. When the guilt of the defendant is well established by competent evidence the courts are hesitant to grant new trials, but here the errors when considered cumulatively require such action. Judgment reversed, on the law and the facts, and a new trial granted. Herlihy, P. J., Reynolds, Staley, Jr., Greenblott and Sweeney, JJ., concur in memorandum by Herlihy, P. J.