■ THOMAS R. FLYNN, Respondent, v MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY, Appellant. — Judgment of the Supreme Court, New York County (H. Schwartz, J.), entered on June 15, 1982, which, after a jury trial, awarded plaintiff the sum of 1.5 million dollars, together with interest, costs and disbursements, is reversed, on the law and the facts, and a new trial directed on the issue of damages only, without costs or disbursements, unless plaintiff, within 20 days of service upon him of a copy of the order herein, with notice of entry, serves and files a written stipulation consenting to a reduction of the verdict in his favor to $850,000 and to the

entry of an amended judgment in accordance therewith. If plaintiff so stipulates, the judgment, as so amended and reduced, is affirmed, without costs or disbursements. On May 6, 1973, as the plaintiff-respondent Thomas R. Flynn was on his way to visit his girlfriend, he suffered serious injuries when the bicycle on which he was riding was struck by a bus on the 96th Street transverse road in Central Park in Manhattan. Earlier that day, the bicycle had been inspected under a warranty. The plaintiff has no memory at all of the accident itself. He recalls taking his bicycle out and then waking up in the hospital. The police officer who responded to the scene, Sergeant Thomas Hansen, testified that when he arrived, the plaintiff was in a state of shock and incoherent. He then interviewed the bus driver, who died prior to the date of trial. The driver informed Sergeant Hansen that after the bus, which was traveling eastbound, had passed a male on a bicycle, an unidentified passenger had approached him to announce that he (the driver) had struck the person on the bike. The officer's memo book was introduced to confirm this account, as well as the accident report which states that the "bicycle hit right rear." The plaintiff also called Norma Hart, a passenger on the bus at the time in question, and Femia Vanderhorst, who was a passenger in a vehicle behind the bus. Ms. Hart asserted that as the bus was nearing the east side of the transverse, an unidentified passenger shouted to the bus driver, "Stop, you hit someone." The driver halted the bus, and he and the passengers exited. Ms. Hart observed the injured plaintiff prone on the side of the roadway. She wrote her name and address on an index card, along with the notation "People on the bus said stop, you hit the boy on the bike," and handed it to another witness, Ms. Vanderhorst. Although this card was originally admitted with the foregoing words redacted, the entire contents were ultimately allowed into evidence to rebut a claim of recent fabrication. It was Ms. Vanderhorst's testimony that she saw the car immediately in front of the one in which she was riding swerve to the left and noticed the plaintiff lying on the roadway. Ms. Vanderhorst and her friend, the driver of the automobile, got out and administered first aid. At this point, the plaintiff declared: "The bus, it hit me. I think I broke my arm." Moreover, an expert in accident reconstruction, William Burrill, stated that the accident occurred at a curve in the road. He explained that when a bus rounds a curve, the rear wheels develop an "undercut" effect so that the rear wheels are closer to the curb than the front wheels. In the opinion of Mr. Burrill, the bus had undercut the plaintiff, causing him to be injured. Since the bus lacked a right-hand mirror, there was a blind spot which prevented the driver's being able to see the plaintiff once the bus had passed him. The expert also concluded that if the driver had made a wider turn, he could have safely cleared the bicycle. The defendant presented no witnesses at trial. Relying almost entirely on the bus driver's report, the defendant contends that there was no impact between the bus and the bicycle but, rather, that the wheels of the plaintiff's bicycle got caught in the sewer grating, throwing him to the ground. According to the defendant, the plaintiff has failed to prove that his injuries were the proximate result of contact between the bicycle and the bus and, further, that the court improperly permitted certain hearsay statements to be introduced into evidence. As this court has previously held in *Archie v Todd Shipyards Corp.* (65 AD2d 699, 700): " 'Proof of defendant's liability may be established by circumstantial as well as by direct evidence. (*Allen* v. *Stokes,* 260 App. Div. 600, 603.) Where, as here, reasonable minds might differ concerning the legitimate inferences to be deduced from the circumstances shown, it is for the jury to draw such inferences.' " Thus, while the plaintiff did not produce any eyewitnesses to the collision itself, the circumstantial evidence supporting the jury's finding of liability was strong, convincing and

uncontroverted. In addition to the testimony of Sergeant Hansen, Norma Hart, Femia Vanderhorst, William Burrill, and the admission of the bus driver's accident report and the police department memo book, Dr. Richard Eaton, the surgeon who attended the plaintiff following his removal to the hospital, stated at trial that plaintiff could not have received his injuries by merely being thrown from the bicycle. When the doctor first examined the plaintiff, he found a compound fracture of the left arm, a dislocation of the forearm and elbow, a deep crushing of the muscles, and a degloving of the skin of the left arm. A degloving occurs where the skin is pinched and pulled away from the hand. Dr. Eaton asserted that an injury of this nature could only have been brought on by a major force, not by a fall from a bicycle or impact with a tree. Further, the Court of Appeals has ruled that where an amnesiac plaintiff, whose amnesia is substantially the result of the accident at issue, has introduced sufficient proof to establish a prima facie case, a lesser burden or persuasion will be applied. (*Schechter v Klanfer*, 28 NY2d 228.) Thus, on the basis of the facts available at trial, the conclusion is inescapable that the plaintiff was indeed struck by the bus. With respect to the alleged hearsay statements, they involve the request by the unknown passenger that the driver stop the bus since it had struck the bicycle rider, the police officer's memorandum book containing the bus driver's description of what that passenger had called out, Ms. Hart's testimony in connection with that same statement by the unidentified passenger and her contemporaneous index card, and Ms. Vanderhorst's assertion that the plaintiff had exclaimed that the bus had hit him. In *People v Caviness* (38 NY2d 227, 230-231), the Court of Appeals stated that: "Spontaneous declarations, frequently referred to with some inexactitude as *res gestae* declarations * * * form an exception to the hearsay rule. It is established that spontaneous declarations made by a participant while he is under the stress of nervous excitement resulting from an injury or other startling event, while his reflective powers are stilled and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection and deliberation, are admissible as true exceptions to the hearsay rule". The witness Vanderhorst testified that the plaintiff, bleeding heavily, declared almost immediately after the accident that he had been hit by the bus. This was a spontaneous declaration which is admissible as an exception to the hearsay rule. The remaining objections all revolve around the statement by the unknown passenger that the bus had struck the person on the bike. In *People v Caviness* (*supra*), the Court of Appeals indicated that the spontaneous declaration exception also extended to bystanders or nonparticipants. In the view of the court (pp 231-232): " 'Assuming that the non-participant is shown to have had adequate opportunity to observe the event, there is no sound reason why his spontaneous exclamation should not be admitted, for the unexpected exciting event may just as effectively produce a natural and spontaneous declaration by a bystander as by a participant' ". Therefore, the utterance by the bus passenger, which was clearly a spontaneous declaration contemporaneous to the incident at issue, was properly allowed into evidence. Nor does the defendant dispute the fact that the passenger actually made the remark. The bus driver, after all, acknowledged that he halted the bus precisely because of the passenger's statement. The driver was a participant in the accident and his explanation of the incident as reported to the police officer was admissible as a record made in the regular course of business. (*Zaulich v Thompkins Sq. Holding Co.*, 10 AD2d 492.) As for Ms. Hart's index card, the record reveals that the contents of that card were admitted only after defendant's counsel had endeavored to depict her testimony as having been recently concocted. To rebut defendant's attempt to prove that Ms. Hart had not heard the exclamation of her fellow passenger, the court appropriately permitted the plaintiff to

demonstrate — through a memorandum made at the accident scene many years before the trial — that her version of what had transpired at the time of the incident was not a recent fabrication. (See *Crawford v Nilan,* 289 NY 444.) However, there is merit to the defendant's argument concerning the excessiveness of the 1.5 million dollar verdict awarded to plaintiff. Despite the serious and partially disabling nature of plaintiff's injury (permanent damage to his left arm and hand), he has been able to complete his dental studies and continue his career largely without interruption. Although his future earning capacity has no doubt been adversely effected by the accident, $850,000 would be sufficient to compensate him for both the degree of that impairment and his conscious pain and suffering. Concur — Kupferman, J. P., Sullivan, Asch and Milonas, JJ.

Silverman, J., dissents in part in a memorandum as follows: I agree with the majority that the verdict is excessive. But I would also reverse the judgment as to liability because it rests largely on inadmissible hearsay. Plaintiff, a bicycle rider in Central Park, New York City, claims that he was injured by a collision with defendant's bus, apparently the right rear of the bus. Nobody testified to seeing the accident happen. Plaintiff himself has no memory of the actual accident. The bus driver has since died, and in any event, he did not see the accident. All the evidence is hearsay. Even as hearsay, I doubt that it indicates whether the accident was plaintiff's fault or defendant's fault, e.g., whether the bicycle swerved into the bus or the bus swerved into the bicycle. But passing that, much of the evidence was inadmissible hearsay. The evidence to which I refer is the police officer's testimony, and memorandum, as to what the bus driver told him; the testimony of Mrs. Hart, a passenger as to what someone in the bus shouted; and an index card memorandum, which she made at the time as to what people in the bus said. Plaintiff's first witness was Police Sergeant Hansen, who testified, on direct examination over objection and motion to strike, that the bus driver told him "that he had passed a male on a bicycle, and that an unidentified passenger had come up to him after he had passed the guy on the bike, and the unidentified passenger said that he had struck the person on the bike." Thereafter, there was introduced on plaintiff's application, and again over objection, an excerpt from the police officer's memorandum book, which contained the statement, "unident passenger reported he had hit the bike rider," apparently referring to the statement obtained from the bus driver. The fact that someone told the bus driver that he had hit the bicycle rider is clearly hearsay. It does not come within any exception to the hearsay rule. It is obviously not a spontaneous exclamation by the passenger who spoke to the driver. It is suggested that the driver's statement is some sort of an admission by adoption. It plainly is not. As the Court of Appeals said in *Reed v McCord* (160 NY 330, 341): "If he had merely admitted that he had heard that the accident occurred in the manner stated, it would have been inadmissible as then it would only have amounted to an admission that he had heard the statement which he repeated and not to an admission of the facts included in it. That would have been in no sense an admission of any fact pertinent to the issue, but a mere admission of what he had heard without adoption or indorsement. Such evidence is clearly inadmissible." (Accord *Cox v State of New York,* 3 NY2d 693, 697-698.) Nor is there anything to show that the bus driver had any authority on behalf of the defendant bus company to adopt someone else's statement as an admission against the bus company. (*Kelly v Diesel Constr. Div. of Carl A. Morse, Inc.,* 35 NY2d 1, 8.) Nor is the police officer's memorandum admissible as an entry in the regular course of business. (*Cox v State of New York, supra.*) In the *Cox* case there was a record of a hearsay statement as to how the accident had

happened. The court (p 699) held the record inadmissible under *Reed v McCord* (*supra*) and stated that the record was not admissible as a business entry because "the report, to be admissible, must be made on information 'imparted by persons who were under a duty to impart such information'". Here the unidentified passenger who told the bus driver that the bus had hit a bike rider was surely not under any duty to impart that information. Plaintiff's next witness, a Mrs. Hart, had been a passenger in the bus. (She was not the unidentified passenger who spoke to the driver.) On direct examination by plaintiff's attorney, in response to the question "what it was that occurred" she said in the jury's hearing: "During the transverse through the Park, a passenger yelled out 'Stop, you hit someone' ." The court struck the answer; but of course the jury had heard it. Immediately thereafter, plaintiff's attorney was permitted to ask whether "somebody yelled something" (obviously referring to the stricken statement a minute earlier "Stop, you hit someone"), and the witness answered, "Yes." On redirect, there was received in evidence an index card made by this witness, on which the witness gave her name and address, the number of the bus, etc., the statement that she had not seen anything except the boy on the ground five minutes later and the dented bike wheel. The index card also contained the following: "People on bus said 'Stop, you hit the boy on the bike.'" The court at first refused to admit "the statement" and the exhibit was received as redacted. But a few days later, and just before the evidence ended, on plaintiff's renewed application, the court admitted into evidence the previously redacted portion on the theory that it was being offered to rebut the contention of a recent fabrication. The claim that there was a contention of recent fabrication was based on the fact that on cross-examination, referring to Mrs. Hart's testimony that somebody had yelled something, the defendant's attorney had asked Mrs. Hart whether in her conference with the attorneys for plaintiff before her testimony she spoke about the shout, and whether they brought that to her attention. Defendant's attorney also asked whether in the one-half hour she spent at the scene of the accident she brought the shout to the attention of the police or anybody in authority, but the court sustained the objection to that question. It is doubtful whether this cross-examination can be deemed a claim of recent fabrication; certainly it cannot be deemed a claim of recent fabrication as to the content of the shout. Further, the index card does not refer to *a* particular passenger's shout; it said *"People* on bus *said"* (emphasis added). Accordingly, it was error to admit the evidence as to the content of what people in the bus said to rebut a claim of recent fabrication of a shout whose content had not been received in evidence. (See *People v Tucker,* 33 AD2d 823, 825.) Further, the fact that there was a shout, without the content of the shout, was essentially neutral (there being no dispute that people in the bus had called the attention of the driver to the fact of the accident). Its probative value was far outweighed by the prejudicial effect of introducing the content of what the passengers said into evidence by way of the index card; and there can be no doubt that is precisely why plaintiff's attorney wanted it in. Plaintiff argues that, in any event, the statement by a passenger in the bus that the bus had struck the person on the bicycle was admissible as a spontaneous declaration by that passenger, under the doctrine of *People v Caviness* (38 NY2d 222), and that makes all the hearsay objections and errors irrelevant. Of course the police officer's statements as to what the bus driver had told him as to what an unidentified passenger had told him cannot possibly qualify as a spontaneous declaration of either the unidentified passenger or the bus driver, and of course, not of the police officer. As to them, the statements were not "the impulsive and unreflecting responses of the declarant to the injury or other startling event".

(*People v Caviness, supra,* at p 231.) Insofar as relates to the shout that Mrs. Hart heard, the content of that shout — even assuming that is what the index card refers to: "People * * * said" — was in theory not admitted under the spontaneous declaration exception as proof of truth of the statement but only to rebut the claim of recent fabrication — in theory. But passing all that, testimony of what the unidentified passenger said and that Mrs. Hart heard would not be admissible as a spontaneous declaration. In *People v Caviness* (*supra*), the Court of Appeals extended the spontaneous declaration exception to permit the admission of a spontaneous exclamation or declaration by a bystander or a nonparticipant. In so doing, however, the court quoted, with approval (pp 231-232), Dean Prince's statement: " 'Assuming that the non-participant is shown to have had adequate opportunity to observe the event, there is no sound reason why his spontaneous exclamation should not be admitted, for the unexpected exciting event may just as effectively produce a natural and spontaneous declaration by a bystander as by a participant' ". But as the person who made the exclamation was not identified, there was no showing that that person "had adequate opportunity to observe the event". True, Mrs. Hart said that on hearing the shout she looked "to the right rear where the person who shouted was sitting," but that does not tell us whether that person was seated on an inside seat or an outside seat, before or behind the place of the claimed impact; it does not even tell us whether that person saw the accident at all, or like Mrs. Hart was merely told of it, perhaps by a neighbor. The prejudice to defendant from the admission of the various items of hearsay at plaintiff's request is not cured nor neutralized, nor is defendant's objection waived, by the fact that somewhat similar related hearsay statements were introduced by defendant. Defendant did not introduce these hearsay statements until after Sergeant Hansen had testified that the driver had told him that an unidentified passenger had told the driver that he had hit the person on the bicycle. Once that evidence was in, over defendant's objection, defendant had the right to introduce evidence qualifying this testimony by showing that what the driver was told was something slightly less damaging to the defendant than what the police officer testified to. The defendant introduced into evidence a police accident report, signed by the police officer, and another statement signed by the police officer that the driver had told him that "bicycle hit right rear" of bus, rather than as Sergeant Hansen had previously testified, that the driver had told him that the passenger had reported that the bus had hit the bicycle rider. (Incidentally, the statement that the police officer had given the defendant, apparently recounting what the bus driver told him, said that the bus driver had no knowledge of any collision with the bicycle.) The defendant also introduced the bus driver's signed statement that the "bike * * * apparently came in contact with right rear" of the bus. Once Sergeant Hansen's testimony had been received as to the driver being told that the bus had hit the bicycle rider, the defendant had the right to introduce evidence slightly qualifying this testimony, without thereby waiving its objection to the testimony. Other errors are claimed by defendant. Those I have mentioned seem to me to require reversal. In my limited role as the dissenting Judge, I see no reason to discuss other claimed errors. However, while it does not affect the basis for my dissent, I must say that I am not impressed with testimony cloaked in pseudo-scientific language that when a vehicle makes a turn, the rear wheels do not just follow in the track of the front wheels but turn in the direction the vehicle is turning — a fact which any nonscientist layman who has ever seen the tracks of the wheels of a turning vehicle in snow or wet is well aware of without the aid of a "safety expert."