■ CHARLES TERWILLIGER, JR., Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 63050.) — Cross appeals from a judgment in favor of claimant, entered April 28, 1982, upon a decision of the Court of Claims (O'Shea, J.). On September 7, 1978, at approximately 9:30 A.M., claimant was a passenger in a G.M.C. pickup truck that was being driven by a coemployee named Robert Kovaly. The truck was owned by the employer, Kuss Brothers, a tent rental firm, and was loaded with tents that were being transported for the employer from one job site to another. At the time of the accident which is the subject of this appeal, the truck was approximately 150 feet south of the Chenango-Broome County line and was proceeding southerly on New York Route 12, a two-lane macadam highway. The weather was clear

and dry and there is no contention that the speed of the truck exceeded the permitted 55 m.p.h. limit. While engaged in a conversation with claimant, Kovaly momentarily turned his head toward the passenger's side and this brief inattention, coupled with an upcoming curve to the left in the highway, caused the truck to leave the traveled portion and go onto the shoulder. When Kovaly attempted to slow its progress and return it to the highway, the truck's right tires engaged a ditch running parallel thereto and the truck struck the headwall of a culvert located only four feet from the edge of the pavement, skidded across Route 12, rolled over and came to rest in an upright position on a downward sloping embankment on the opposite side of the road, causing serious, severe and permanent injuries to claimant. The section of Route 12 where the accident occurred was originally constructed in 1934 as a 20-foot-wide reinforced concrete highway with four-foot gravel shoulders and a drainage ditch running parallel to the pavement. The culvert was installed to permit the passage of water in the drainage ditch, with the concrete headwalls supporting each end of the culvert pipe. A farm road was built over the culvert and permitted access to Route 12 from adjoining farm land. In the early 1950's, the State widened portions of Route 12 from 20 feet to 24 feet. In Chenango County this was accomplished by removing the original pavement and constructing a new 24-foot wide "deep base" paved highway with eight-foot-wide paved shoulders and drainage ditches. However, in Broome County, where this accident occurred, Route 12 was widened to 24 feet by simply adding two feet of pavement to the edge of each side of the highway driving lanes, which reduced the width of each of the shoulders by two feet. Although some resurfacing took place in 1964, at the time and place of the accident the two feet of pavement which had been added in the early 1950's had settled, leaving a crack or seam running between the edge of the original pavement and the two-foot addition. According to claimant's engineering expert, this settling tended to destroy the superelevation normally present in such a curve to the left and caused vehicles to drift to the outside of the curve. In this expert's opinion, this loss of superelevation and the absence of warning signs on the curve, coupled with an inadequate shoulder and the unnecessary proximity of the headwall and culvert, created an unreasonably dangerous and hazardous condition which proximately caused the accident and claimant's resulting injuries. The Court of Claims agreed and found, as a matter of fact and of law, that the culvert was unnecessary since the access road which ran over it had been abandoned and that the widening of Route 12 brought the culvert too close to the pavement (four feet). It was also found that prior accidents (five between May, 1975 and May, 1978), all involving this culvert, should have alerted the State to the hazards of maintaining it and its headwall in that condition and, inasmuch as the culvert could have been removed at nominal cost, the State was under a duty to remove it (*Gutelle v City of New York,* 55 NY2d 794; *Humphrey v State of New York,* 90 AD2d 901, 902). The court concluded that when the State failed in the performance of such duty, and failed to keep and maintain the highway and its shoulder in a reasonably safe condition, it was guilty of negligence proximately causing or contributing to claimant's injuries and should be liable for claimant's damages, he himself being free from any negligence proximately causing or contributing thereto. Based upon these findings, the Court of Claims awarded claimant judgment in the total amount of $1,895,159.96, consisting of general damages of $1,500,000 plus $70,159.96 for past medical expenses and $325,000 in past and future lost earnings. We affirm that judgment in regard to both liability and amount. Contrary to the State's contention on this appeal, we find the doctrine of *Weiss v Fote* (7 NY2d 579), which immunizes the State from liability in the exercise of a governmental function, inapplicable to this situation. Rather, we find the correct governing principles of law in *Bottalico v State of New York* (59 NY2d 302, 304)

wherein the court held that: "When the State or one of its governmental subdivisions undertakes to provide a paved strip or shoulder alongside a roadway, it must maintain the shoulder in a reasonably safe condition for foreseeable uses, including its use resulting from a driver's negligence. Injuries arising from a traveler's use of an improperly maintained roadway shoulder may be compensable through application of general principles of negligence and comparative negligence." (See, also, *Retzel v State of New York*, 94 Misc 2d 562, 565-567.) We also agree with the rejection by the Court of Claims of the State's seat belt defense, finding that it was not actually shown that a seat belt was available to claimant at the time of the accident or that use of a seat belt would have reduced the extent of claimant's injuries. Further, we find the amount of awarded damages to be fair and reasonable. Claimant sustained injuries which resulted in permanent paralysis from the waist down, with total loss of control of bladder and bowel movements, loss of sexual function, shortened life expectancy, as well as multiple lacerations of the face, fractured upper and lower jaw bones, fractured cheek bone, ruptured spleen, bleeding in chest cavity, fractured clavicle and scapula, fracture dislocation of the spine, leg spasms, and increasing stiffness and calcification in the lower body. The court took into account claimant's earning potential, which it found minimal, for his 39 years of work expectancy (claimant being only 26 years old at the time of the accident) and also the resultant stress and strain on his family and personal life. Under these circumstances, we believe the award to be fair, just and reasonable, and reject claimant's cross appeal alleging its inadequacy. For all the reasons set forth above, we affirm the judgment of the Court of Claims. Judgment affirmed, without costs. Kane, J. P., Main, Casey, Mikoll and Yesawich, Jr., JJ., concur.