■ JOHN R. VAN SYCKLE et al., Respondents, v MARGRETHE R. POWERS, as Temporary Administratrix of the Estate of MARVIN W. WOODRUFF, Deceased, Appellant. — Appeals (1) from a judgment of the Supreme Court in favor of plaintiffs, entered January 24, 1984 in Albany County, upon a verdict rendered at Trial Term (Conway, J.), (2) from an order of said court, entered January 24, 1984 in Albany County, which granted defendant's motion to set aside the verdict to the extent of ordering a new trial unless plaintiffs stipulated to a reduction of the verdict, and (3) from an order of said court, entered January 24, 1984 in Albany County, which denied defendant's motion to enforce an oral settlement agreement.

In November of 1976, plaintiff John R. Van Syckle discovered a lump in his penis which was ultimately diagnosed as Peyronie's disease, an affliction causing curvature of the penis and consequently diminished sexual function. After several months of conservative treatment, including the use of vitamin E and ultrasound, surgery was performed by defendant on June 20, 1977.[*] During the operation, a section of tissue measuring 4 by 3½ by 3 centimeters was removed from the last third or distal portion of plaintiff's penis. The objective was to remove hardened tissue or plaque resulting from the disease in order to alleviate the curvature. After the operation, plaintiff was diagnosed as permanently impotent, a condition not alleviated by two subsequent operations. At the close of evidence in this malpractice action brought by plaintiff and his wife, the trial court granted plaintiff's motion for a directed verdict on the issue of liability. The jury awarded $1,925,000 in damages to plaintiff and $500,000 to his wife on her derivative cause of action. The trial court granted defendant's motion to set the verdict aside to the extent of ordering a new trial, unless plaintiffs agreed in writing to accept reduced verdicts of $1,390,000 and $360,000, respectively, plus interest and costs.

---

[*] Defendant died during the trial. This appeal is brought by the temporary administratrix of his estate.

Plaintiffs so stipulated. Another order was entered simultaneously denying defendant's motion to enforce an oral agreement of settlement for the sum of $500,000. Defendant appeals from both orders and the judgment awarding plaintiffs the total sum of $1,769,015.80. Although plaintiffs did not cross-appeal, they do request this court to reinstate the jury's verdicts pursuant to CPLR 5501 (subd [a], par 5) (see Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 5501:8, p 28).

Defendant initially urges that the oral settlement agreement reached between counsel during the course of jury deliberations should be enforced. It appears undisputed that counsel for both parties, with the consent of their clients, confirmed a settlement agreement in the amount of $500,000 with a handshake, and an understanding that the terms would be placed in writing. Plaintiffs' attorney, however, then informed the trial court that he preferred to hear the jury's verdict. When advised by the court that no verdict would be rendered if a settlement existed, counsel stated that the case was not settled. Counsel for both parties were present in the courtroom when the verdict was reported. Plaintiffs refused to execute the necessary releases and stipulations of discontinuance, and proffered drafts totaling $500,000 were returned to defendant.

We conclude that no legally binding settlement was effected by the oral agreement between the attorneys. No attempt was made to place the agreement on the record despite invitation from the trial court to do so. Since the agreement was not in writing or conducted in open court as required by CPLR 2104, it is not binding against plaintiffs (*Matter of Dolgin Eldert Corp.,* 31 NY2d 1; *Henderson v Weston's, Inc.,* 102 AD2d 997, 998; *Gonyea v Avis Rent A Car System,* 82 AD2d 1011, 1012). Defendant maintains that the agreement should be enforced as a matter of equity since there was no dispute as to its terms, a representation was made that a written stipulation would be executed, and defendant acted in good-faith reliance to his detriment (see, e.g., *Golden Arrow Films v Standard Club of Cal.,* 38 AD2d 813, 814; *Gass v Arons,* 131 Misc 502). This argument is unpersuasive, basically because defendant has failed to demonstrate any reliance upon the purported agreement. Defense counsel made no attempt to place the agreement on the record, did not inform the trial court that an agreement had been reached, and stood silent while the verdicts were reported by the jury. This is not an instance where a jury has been discharged in the belief that a binding settlement has been reached, leaving a party with neither an agreement nor a verdict (see *Veith v ABC Paving Co.,* 58 AD2d 257, 258, 260; *Gass v Arons, supra*). Absent a showing of compliance with

CPLR 2104 or detrimental reliance, the trial court correctly denied defendant's motion to enforce the purported settlement.

Defendant next urges that the trial court erred in directing a verdict in plaintiffs' favor on the issue of liability. Again, we disagree. The standard in deciding a motion for a directed verdict is whether the jury could find for the nonmoving party by any rational process (Siegel, NY Prac, § 402, p 529). The evidence is reviewed in a light most favorable to the nonmoving party, as are all questions of witness credibility (*Weir v Slate,* 51 AD2d 665; *Prince v City of New York,* 21 AD2d 668). Here, the issue resolved to whether an excessive quantity of tissue was removed from plaintiff's penis. Defendant testified in his deposition that he removed tissue measuring 4 by 3½ by 3 centimeters, or a total of 42 cubic centimeters. Plaintiffs' medical expert, Dr. Charles Devine, Jr., testified that penile plaque is confined to the tissue covering the erectile tissue (Tunica Albuginea) and generally has a depth of only 2 to 3 millimeters. Upon examination of the slide specimens representing the tissue removed by defendant, Dr. Devine testified that the slides showed "a very thick layer of erectile tissue attached to the undersurface of the plaque". He opined that a considerable amount of erectile tissue had been removed during the June, 1977 surgery, particularly in the distal third of the penis, causing plaintiff's present state of impotency, and that the removal of such a large amount of tissue represented a deviation from the relevant standard of care. Defendant's medical expert, Dr. William Furlow, conceded that the removal of 42 cubic centimeters of tissue would necessarily indicate the removal of a large amount of erectile tissue. He further agreed that if a majority of the tissue removed was erectile tissue, then defendant was negligent. Although Dr. Furlow testified that he doubted the accuracy of the 42 cubic centimeter measurement, the undisputed fact is that defendant's own testimony confirmed that measurement on at least three occasions. Moreover, Dr. Furlow conceded that plaintiff's present impotency results from the absence of erectile tissue in the distal area. He further testified that there was nothing in the record to substantiate defendant's contention that the disease had been progressing rapidly. Thus, in defendant's testimony and that of his own medical expert, the record confirms that the removal of 42 cubic centimeters of tissue including a large amount of erectile tissue resulted in plaintiff's impotency. These circumstances prevailing, the trial court properly granted plaintiff's motion for a directed verdict on the issue of liability.

Defendant further maintains that plaintiffs failed to meet the burden of proof concerning psychological injury since only hearsay evidence was presented on this issue. While plaintiff did not

testify, his wife testified about her personal observations of his behavior following surgery, which included recurrent periods of depression and withdrawal from social activities and friends. These observations were not in the nature of hearsay (see 5 Wigmore, Evidence [Chadbourn Rev], § 1361, pp 1-3). Moreover, a psychiatrist, Dr. Richard Felch, opined that plaintiff suffered from three psychological disorders causally related to the 1977 surgery. Since defendant concedes that Dr. Felch's testimony was admissible, it is clear that the evidence concerning psychological inquiry emanated from qualified sources of information.

Finally, defendant argues that the jury verdicts, even as reduced by the trial court, are grossly excessive. Plaintiffs counter by urging reinstatement of the jury's original verdicts (see CPLR 5501, subd [a], par 5). At the time surgery was performed, plaintiff was 38 years old and the father of three children. He underwent a vasectomy in 1970 and was able to function sexually despite the Peyronie's disease. The 1977 surgery has left him permanently impotent and disfigured. It cannot be disputed that this condition has had a profound effect on plaintiff as an individual and in his marital relationship. He has been diagnosed as suffering from a posttraumatic stress disorder, a depressive neurosis and a major depressive disorder. Despite the guarded prognosis for recovery, however, plaintiff's psychiatrist indicated that the depression may diminish with time. Significantly, plaintiff never obtained any psychiatric treatment. Giving due regard to both his physical and emotional pain, the treatments endured, and his disfigurement, the fact remains that plaintiff is physically capable of pursuing his everyday activities (see *Flynn v Manhattan & Bronx Surface Tr. Operating Auth.*, 94 AD2d 617, 620, affd 61 NY2d 769; *Rush v Sears, Roebuck & Co.*, 92 AD2d 1072, 1073).

Having carefully reviewed the entire record and considering plaintiff's injury which we in no way minimize, we are of the opinion that $750,000 would more realistically represent just compensation for the injuries he sustained. We reach this conclusion after consideration of several recent cases before this court, particularly *Rush v Sears, Roebuck & Co.* (*supra*), where a verdict of $4,000,000 to a young woman who suffered excruciating and dramatic burns over approximately 42% of her body was reduced to $1,500,000; *Caprara v Chrysler Corp.* (71 AD2d 515, affd 52 NY2d 114), where a $4,000,000 verdict to a young man rendered a quadraplegic was reduced to $2,000,000; and *Terwilliger v State of New York* (96 AD2d 688, mot for lv to app den 60 NY2d 558), where we sustained a verdict in the total amount of $1,895,159.96 (including general damages of $1,500,000) in favor of a 26-year-old man who sustained injuries resulting in

permanent paralysis from the waist down with total loss of control of bladder and bowel movements, loss of sexual function, a shortened life expectancy and numerous serious bone fractures (see *Sternemann v Langs,* 93 AD2d 819; *Warmsley v City of New York,* 89 AD2d 982; see, also, *Martell v Boardwalk Enterprises,* 748 F2d 740). For the same reasons, the award to plaintiff's wife on her derivative cause of action should be reduced to $250,000.

Accordingly, the judgment should be modified by reversing so much thereof as awarded plaintiff $1,390,000 and his wife $360,000, and a new trial is ordered only with respect to the issue of damages unless within 20 days after service of a copy of the order to be entered herein, plaintiffs shall stipulate to a reduction in the verdicts in their favor from $1,390,000 to $750,000 and $360,000 to $250,000, respectively.

Judgment modified, on the law and the facts, by reversing so much thereof as awarded plaintiff John R. Van Syckle $1,390,000 and plaintiff Jean L. Van Syckle $360,000, and a new trial ordered only with respect to the issue of damages that were awarded to plaintiffs, unless, within 20 days after the service of a copy of the order to be entered herein, plaintiffs shall stipulate to reduce the amount of the verdicts in their favor as indicated herein, in which event, the judgment, as so reduced, is affirmed, with costs to plaintiffs.

Appeal from order granting defendant's motion to set aside the verdict dismissed as academic, without costs.

Order denying defendant's motion to enforce the oral settlement agreement affirmed, without costs. Mahoney, P. J., Kane, Main, Weiss and Mikoll, JJ., concur.