■ JAMIE LEE NORTON et al., Respondents, v PATRICIA NGUYEN et al., Appellants. [853 NYS2d 671]—

Kane, J.

Plaintiff Jamie Lee Norton (hereinafter plaintiff) gave birth to her second child at defendant Nathan Littauer Hospital and Nursing Home. Defendant Patricia Nguyen, an obstetrician employed by the hospital, performed the delivery. During the hospital stay, defendant Deborah Kaufman, another obstetrician employed by the hospital, also provided care for plaintiff. The day after Nguyen discharged plaintiff from the hospital, plaintiff was readmitted. She was subsequently diagnosed with a virulent group A streptococcal infection which spread throughout her internal organs, requiring the surgical removal of her uterus, ovaries and fallopian tubes, as well as other medical interventions.

Plaintiff and her husband, derivatively, commenced this medical malpractice action mainly alleging that defendants were negligent in failing to recognize that she was suffering from an infection prior to her discharge from the hospital. A jury found defendants negligent, awarded plaintiff $1 million for past pain and suffering and $4 million for 57 years of future damages, and awarded her husband $250,000 for past pain and suffering and $500,000 for 50 years of future damages. Supreme Court denied defendants' motion to set aside the verdict, but reduced the future damages to $2 million for plaintiff and $250,000 for her husband. Defendants appeal.

The verdict was not against the weight of the evidence. The day after plaintiff gave birth, while Kaufman was providing

care, plaintiff experienced tachycardia, had severe abdominal pain, an elevated white blood cell count and increased bands of immature white blood cells. Although plaintiff did not have a fever, she was taking pain medication which could reduce her temperature and mask a fever. The following day, while Nguyen was providing care and discharged plaintiff, plaintiff continued to experience tachycardia, had an elevated white blood cell count and increased bands, no bowel sounds and severe abdominal pain. While defendants' witnesses testified that considering or treating for an infection was not warranted because plaintiff did not have a fever or uterine tenderness, plaintiffs' witnesses testified that defendants' care fell below the standard of care by not recognizing that plaintiff had the signs and symptoms of a postpartum infection and investigating the source to diagnose and treat that infection. Plaintiffs' expert witnesses further testified that if the infection had been timely diagnosed and treated, it would have been controlled without the necessity of surgery. Considering the conflicting expert medical testimony, and giving deference to the jury's credibility determinations, the evidence did not preponderate in defendants' favor so as to require a reversal on this ground (*see Stewart v Olean Med. Group, P.C.*, 17 AD3d 1094, 1095-1096 [2005]; *Harris v Parwez*, 13 AD3d 675, 677 [2004]).

Supreme Court did not improperly limit the defense's proof by curtailing the testimony of a nurse who treated plaintiff at the hospital. The court ruled that the nurse could testify regarding her observations, but could not give any opinions or expert testimony based upon her 36 years of nursing experience, because defendants did not include the nurse in their expert disclosure. This ruling was correct. CPLR 3101 (d) (1) (i) requires disclosure of any medical professional, even a treating physician or nurse, who is expected to give expert testimony (*see Chapman v State of New York*, 189 AD2d 1075, 1075 [1993]). Because defendant did not disclose the nurse as an expert, the court appropriately permitted her to provide factual testimony but not opinions.

Upon defendants' motion after plaintiff refused to sign Health Insurance Portability and Accountability Act of 1996 authorizations, Supreme Court issued a pretrial order requiring plaintiff to sign medical authorizations permitting defense counsel to interview plaintiff's treating physicians, but imposing a condition that counsel provide copies of all interview notes to plaintiffs' counsel. All parties concede that, pursuant to a recent Court of Appeals decision, this condition was improper (*see Arons v Jutkowitz*, 9 NY3d 393, 416 [2007]). Nevertheless, a

new trial is not warranted here. There was no dispute concerning the need for nor extent of corrective surgery, nor was there significant treatment following plaintiff's recovery from her surgery. Under the circumstances here, defendants failed to establish prejudice related to the condition imposed by the court. Additionally, from the notes included in the record,[1] we fail to see how defendants were prevented from conducting further interviews. Counsel could have interviewed the physicians and recorded only factual information, or taken no notes at all, thereby complying with the condition and not revealing litigation strategy. Under the circumstances, a reversal is not required based upon the improper imposition of this condition.

By failing to object to Supreme Court's interjection into the examination of two witnesses, defendants failed to preserve that issue for our review (see Thaler & Thaler v Rourke, 217 AD2d 893, 894 [1995]). In any event, the court was legitimately exercising its discretionary authority to control the trial (see id.). As for the challenged statements made by plaintiffs' counsel in summation, most constituted fair comment on the evidence or a response to the defense summation.[2] While it is inappropriate to refer to the jury as the "conscience of the community," the context of that single reference reveals that there was no repeated prejudicial appeal to the jury's sympathies and no inappropriate effort to obtain punitive damages (compare Reynolds v Burghezi, 227 AD2d 941, 942 [1996]; Halftown v Triple D Leasing Corp., 89 AD2d 794, 794 [1982]). Thus, no new trial is required based upon the summation (see Sweeney v Peterson, 24 AD3d 984, 985 [2005]).

Some of the damages awards, even as reduced by Supreme Court, materially deviate from reasonable compensation (see CPLR 5501 [c]). Based upon the difficulty in quantifying awards for pain and suffering, comparable cases provide a comparison to determine whether the awards here deviate materially from reasonable compensation (see Acton v Nalley, 38 AD3d 973, 976 [2007]; Osiecki v Olympic Regional Dev. Auth., 256 AD2d 998, 1000 [1998]). Plaintiff was required to undergo surgeries to remove her uterus and both ovaries and fallopian tubes. She also had a temporary colostomy, which later had to be reversed. Severe organ failure required her to be placed in a medically-

---

1. Defense counsel conducted an interview of one physician, then determined that further interviews were not practical given the condition imposed.

2. Although it was inappropriate for plaintiffs' counsel to suggest reasons why plaintiff's doctors might not testify, such comment was invited by defense counsel's statement, unsupported by the record, that plaintiff's treating doctors were "unwilling" to testify.

induced coma for one week. She experiences pain from bowel movements, which is controlled by daily medication. Plaintiff testified that she suffers emotional distress and began to experience menopause at the age of 20. This caused a decrease in, and discomfort from, sexual activity. Plaintiff had to stop estrogen-replacement therapy because it caused a pulmonary embolism; future use of hormone therapy could cause further dangerous blood clots. Accordingly, the award, as reduced by the court, of $1 million for past pain and suffering and $2 million for future pain and suffering is reasonable compensation for these injuries (*compare Allison v Erie County Indus. Dev. Agency*, 35 AD3d 1159, 1160 [2006] [reducing award to $1 million past damages and $4 million future damages to young male who sustained spinal fractures resulting in back pain, use of catheter to urinate, inability to defecate in normal manner and sexual dysfunction]; *Young v Tops Mkts.*, 283 AD2d 923, 924-925 [2001] [reducing awards to $1 million for past damages and $2.5 million for 25 years of future damages to male who suffered serious injuries to femur, spinal column, knee, heel and pelvis with continuous pain and significant physical limitations]).

Plaintiff's husband, with the assistance of his mother and mother-in-law, cared for a toddler and a newborn while plaintiff was hospitalized and while she recovered. He continues to perform limited household chores previously handled by plaintiff. He provided no testimony that his marital relations have been affected by his wife's injuries and her extremely premature menopause. Based on the proof here, the award of $250,000 for past pain and suffering and $250,000 for 50 years of future pain and suffering was unreasonable (*compare Gunder v Murthy*, 185 AD2d 915, 916-917 [1992]; *Van Syckle v Powers*, 106 AD2d 711, 714-715 [1984], *lv denied* 64 NY2d 609 [1985]). Awards of $100,000 for past pain and suffering and $100,000 for future pain and suffering are reasonable.

Defendants' remaining arguments are without merit.

Mercure, J.P., Spain, Rose and Lahtinen, JJ., concur. Ordered that the order and judgment are modified, on the facts, without costs, by reversing so much thereof as awarded plaintiff Douglas P. Norton $250,000 for past pain and suffering and $250,000 for future pain and suffering; new trial ordered on the issue of said damages unless, within 20 days after service of a copy of the order herein, plaintiffs stipulate to reduce the awards to $100,000 for past pain and suffering for plaintiff Douglas P. Norton and $100,000 for future pain and suffering for plaintiff Douglas P. Norton, in which event said order and judgment, as so modified, are affirmed.