■ BEVERLY L. McELROY et al., Appellants, v M. BASHAR YOUSUF et al., Respondents, et al., Defendant. [702 NYS2d 190] —Mugglin J. Appeals (1) from an order of the Supreme Court (Coutant, J.), entered December 23, 1998 in Broome County, which denied plaintiffs' motion to vacate and/or set aside the jury verdict, and (2) from a judgment of said court, entered July 21, 1999 in Broome County, upon a verdict rendered in

favor of defendant M. Bashar Yousuf and partially in favor of defendant United Health Services.

Plaintiff Beverly L. McElroy (hereinafter plaintiff) consulted defendant M. Bashar Yousuf, a cardiothoracic surgeon, in December 1991 concerning a spot on her posterior chest wall and a spot in the right upper lobe of her lung. A needle biopsy of the chest wall lesion was performed but no definitive diagnosis concerning the mass was made. After a review of the available treatment options, plaintiff determined to proceed with an exploratory thoracotomy to rule out the possibility of a chest wall malignancy. This surgery was performed in January 1992 at a hospital operated by defendant United Health Services (hereinafter UHS). During the surgical procedure, specimens of the mass from the chest wall and the upper lobe of the lung were removed and transported to the pathology laboratory for analysis. When the pathology report proved inconclusive, Yousuf proceeded to perform a rib resection to remove the chest wall lesion, as well as removal of the upper right lobe of the lung. While in recovery, plaintiff noticed that she was unable to move her legs. Several hours later, Yousuf called for a neurological consultation and an MRI was performed. The MRI showed a spinal infarct but no evidence of compression of the spinal cord itself. Plaintiff has never recovered use of her legs and is permanently paralyzed.

In February 1994, plaintiff and her husband, derivatively, commenced this action alleging that defendants were negligent in their care and treatment of plaintiff and that this negligence resulted in her paraplegia. At the conclusion of the trial, the jury rendered a verdict in favor of Yousuf on all causes of action. It further found in favor of plaintiffs against UHS on the causes of action concerning the interpretation of a tissue specimen from the upper lobe of plaintiff's lung, but found in favor of UHS on the causes of action regarding the interpretation of the tissue specimens from plaintiff's chest wall. In answering the five subparts to question 1 of the verdict sheet concerning Yousuf, the jury found Yousuf negligent in two areas but found that neither was a proximate cause of plaintiff's paraplegia. Question 2 of the verdict sheet concerned UHS pathologist Claude Cornwall and his interpretation of the chest wall frozen sections. With respect to this question, the jury answered in the negative. However, in answering question 3 as to the percentage of fault of each defendant, the jury assigned 100% of the fault to Yousuf. Following the rendition of the verdict, plaintiffs moved to set aside the verdict as against the weight of the evidence and on the ground that the responses to the

verdict sheet indicated jury confusion. This motion was denied and plaintiffs now appeal from the denial of that motion and from the judgment rendered after verdict.

Plaintiffs contend that the jury's responses concerning Yousuf's negligence in question 1 and the apportionment of fault in question 3 create an inconsistency demonstrating that the jury was substantially confused by the verdict sheet and the charge, requiring a new trial. The verdict sheet immediately after question 2 instructed the jury as follows: "If you have answered 'no' to each of the above questions 1a through 1e or to question 2, proceed to question 4; if you have answered yes to any of questions 1a through 1e *and* question 2, proceed to question 3" (emphasis in original). Clearly, in responding to question 3, the jury misinterpreted the instructions contained in the verdict sheet. Since they did not respond "yes" to question 2, the jury should not have responded to question 3. Nevertheless, the jury's response to question 3 does not render the verdict inconsistent since the actions of the jury are clearly explainable and do not rise to the level of confusion necessary to require a new trial. In responding to question 3, the jury interpreted the word "fault" to be the equivalent of negligence (without fully appreciating the more subtle issue of proximate causation) and, since the only finding of negligence was against Yousuf, 100% of the fault was assessed against him.

We believe that, under the circumstances, the jury's findings with respect to questions 1 and 2 are not rendered inconsistent as a result of its response to question 3. It is well settled that "before a new trial is ordered on this basis it must be shown that the jury was substantially confused by the verdict sheet and the charge and was thus unable to make a proper determination upon adequate consideration of the evidence" (*Dunn v Moss*, 193 AD2d 983, 985; *see, Stilloe v Contini*, 213 AD2d 815, 817). Since we do not perceive that the jury was substantially confused, we hold that Supreme Court did not abuse its discretion in denying plaintiffs' motion to set aside the verdict on the grounds of juror confusion and inconsistency of the verdict sheet.

Nor did Supreme Court err in refusing to set aside the jury verdict as against the weight of the evidence. To prevail upon this type of motion, plaintiffs are required to show that the preponderance of the evidence is so greatly contrary to the jury's verdict that it could not have been rendered by any fair interpretation of the evidence (*see, Lolik v Big V Supermarkets*, 86 NY2d 744; *Fridovich v Meinhardt*, 247 AD2d 791, 792). We

have carefully examined plaintiffs' contentions in this regard and find each to be lacking. There is no merit to plaintiffs' contention that no fair interpretation of the evidence supports the jury's finding that Yousuf's failure to specifically advise plaintiff of the risk of paraplegia did not amount to negligence. A physician is required to inform his patient of all reasonably foreseeable risks relative to a certain medical procedure (*see,* *Bernard v Block*, 176 AD2d 843, 848). Although it is uncontroverted that Yousuf did not specifically advise plaintiff of any risk relative to paraplegia, the evidence, which the jury apparently chose to accept, demonstrates that such condition would be extremely uncommon and an unexpected complication of any chest surgery. Furthermore, Yousuf's expert testified that given the unexpected nature of this type of complication, failure of Yousuf to specifically advise her of this remote possibility did not constitute a departure from the required standard of care.

Plaintiffs further contend that the jury's determinations were against the weight of the evidence with respect to the following findings: that Yousuf was not negligent in failing to have a neurosurgeon in attendance; that Yousuf's failure to have an MRI or CT scan performed closer to the time of surgery was not a proximate cause of the paraplegia; that Yousuf was not negligent in proceeding with the removal of the lesion and rib resection without a definite diagnosis from pathology; and that plaintiff's injuries were not proximately caused by Yousuf's negligence in failing to promptly consult a neurosurgeon immediately following plaintiff's loss of ability to move her legs during recovery. The record reveals that, with respect to each issue, the jury was confronted with conflicting expert opinions and therefore had to perform its function of deciding which evidence it accepted and which it rejected. The jury's resolution of conflicting expert testimony is entitled to great weight since it is the jury which had the opportunity to observe and hear the experts (*see,* *Lohan v Evanczyk*, 229 AD2d 844, 846). After careful examination of all of the evidence presented with respect to each issue, we are persuaded that no valid basis exists for disturbing the jury's verdict.

Turning to plaintiffs' final argument that the finding that Cornwall was not negligent in his interpretation of the frozen section from plaintiff's chest wall area was contrary to the weight of the evidence, we find no valid reason to disturb the jury's conclusion. Once again, the jury was presented with conflicting expert testimony on this issue and its resolution of that conflict is accorded great deference (*see,* *Lohan v Evanc-*

*zyk, supra*). It is reasonable to conclude, given the circumstances that then existed, that the jury accepted the expert testimony of Cornwall who testified that although no definitive diagnosis of malignancy was capable from the frozen section, the demonstrated changes were consistent with mesothelioma, a particularly virulent form of cancer, and rejected the expert testimony of plaintiffs' pathologist which opined that diagnosis should have been deferred until additional study could have been performed.

Mercure, J. P., Crew III, Spain and Carpinello, JJ., concur. Ordered that the order and judgment are affirmed, with costs.