■ WENDY L. HARRIS, Respondent, v KHALID PARWEZ, Appellant. [785 NYS2d 781]—

Mugglin, J. Appeal from an order of the Supreme Court (Monserrate, J.), entered June 13, 2003 in Otsego County, which granted plaintiff's motion to set aside a verdict in favor of defendant and granted a new trial.

In this medical malpractice action, the jury answered the following question in the negative: "Has the plaintiff, Wendy Harris, sustained her burden of proving that the manner in which defendant, Dr. Khalid Parwez, performed a laparoscopy on her on November 23, 1998 deviated below the standard of reasonably acceptable medical care?" Supreme Court, determining that the evidence so preponderated in plaintiff's favor that this verdict could not have been reached on any fair interpretation of the evidence, granted plaintiff's motion to set the verdict aside and for a new trial. Defendant appeals.

" 'In determining if a jury verdict should be set aside, the question is whether there is sufficient evidence to support the verdict and, if so, whether the evidence on the whole so

preponderates in favor of the losing party that the verdict could not have been reached on any fair interpretation of the evidence' " (*King v Jordan*, 265 AD2d 619, 619-620 [1999], quoting *Santalucia v County of Broome*, 228 AD2d 895, 896 [1996]; *see Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [1995]). With these principles in mind, we turn to the record. To perform plaintiff's laparoscopy, defendant first inserted a veress needle, at 90 degrees, through the center of her umbilicus so that carbon dioxide could be introduced into the abdominal cavity to enlarge it for easier viewing through the laparoscope. Next, after making a small incision near the lower edge of the umbilicus, he inserted, using a "z" technique, a second sharp instrument known as a trocar, which serves as a sleeve for the laparoscope so that the patient's lower abdomen can be viewed. At a point approximately beneath the umbilicus, the abdominal aorta bifurcates forming the common iliac arteries and these vessels carry blood from the heart to the extremities. Adjacent to the abdominal aorta is the vena cava which carries blood from the extremities back to the heart. It also bifurcates near where the aorta bifurcates and the left common iliac vein running down the left leg passes beneath the right common iliac artery running down the right leg. Plaintiff's current physician is treating her for an obstruction in the right common iliac artery and a blockage in the left common iliac vein.

Plaintiff introduced evidence attempting to prove three separate acts of malpractice, namely, first, that defendant negligently cut plaintiff's abdominal aorta and vena cava with the trocar, second, that defendant punctured plaintiff's right common iliac artery and left common iliac vein with the veress needle, and third, that defendant was negligently responsible for a 37-minute delay after a "code blue" was called before emergency surgery commenced during which time plaintiff lost almost her entire blood supply.

Although the Pattern Jury Instruction committee recommends that all claimed departures be itemized on the verdict sheet (*see* 1A NY PJI3d 651 [1999]), where, as here, a single question was asked and answered in defendant's favor, the verdict should be set aside if the evidence so preponderates in plaintiff's favor on any theory (*cf. Davis v Caldwell*, 54 NY2d 176 [1981]).

No one disputes that emergency surgery was performed to save plaintiff's life. The location of that surgery, however, was greatly disputed. Both plaintiff's expert witness and defendant's expert witness agreed that if the surgeon correctly testified that he repaired a laceration to the aorta and vena cava ap-

proximately five centimeters above the bifurcation, malpractice occurred. Thus, the evidence on this issue is crucial. Defendant's expert's opinion was based on a CT scan report that "[t]here is persistent apparent narrowing of the low inferior vena cava at its bifurcation. There is also [a] question of narrowing of the proximal right common iliac artery presumably the location of the aortalcaval repair." As the CT scan revealed no narrowing five centimeters above the bifurcation, the expert testified that (1) the injury occurred at or near the bifurcation, (2) although rare, injury from the sharp instruments introduced into the abdomen are known and accepted risks of the procedure, and (3) such injuries can occur in the absence of malpractice. Thus, we conclude that there is sufficient evidence to support the jury verdict.

As a result, we turn to the second issue of whether or not the evidence on the whole so preponderates in favor of this plaintiff that the verdict could not have been reached on any fair interpretation of the evidence. In this review, we are mindful that "considerable deference must be accorded to the jury's interpretation of the evidence and resolution of credibility issues, including those created by the conflicting opinions of medical experts" (Hess v Dart, 282 AD2d 810, 811 [2001]; see McElroy v Yousuf, 268 AD2d 733, 735 [2000]). In addition, great deference is particularly warranted "in a negligence case where the verdict was in favor of the defendant" (Carpenter v Albee, 192 AD2d 1004, 1004-1005 [1993]). Even so, we conclude that this verdict should be set aside. The surgeon who performed the emergency repair testified as to its location and marked an exhibit for the benefit of the jury. In his testimony, he stated that he was "certain that it was below the renals and above the inferior mesenteric vessels. So somewhere in this two-inch segment, five-centimeter segment (indicating) between the renals and inferior mesenteric." He further testified that he observed an oblique transection on both the abdominal aorta and the vena cava and his postoperative notes corroborate this location by using the same anatomical terms and describing the "oblique transections" to be "secondary to the trocar." Moreover, when questioned by plaintiff's counsel, defendant agreed that he was present while the surgeon repaired the injury, that he actually looked in the patient's abdomen and he agreed that the injury was above the bifurcation. The opinion of defendant's expert as to the site of the trocar injury was weakened by the testimony of two other doctors. First, the radiologist who read the CT scan and made the report testified that not only was there nothing on the films which would definitively identify the site of the surgery, but that the surgeon would be in the best position to

determine where he did the repair. Plaintiff's treating vascular surgeon also testified that, since the trocar is a much larger instrument than the veress needle, if it had impacted the right common iliac artery of a person of plaintiff's size, there would have been an immediately evident circulation problem in her right leg because the trocar would have put a huge hole in the artery, possibly severing it. We, therefore, conclude that the evidence as to the location of the trocar injury so preponderated in plaintiff's favor that the jury could not have reached its conclusion based on any fair interpretation of it. As there was no dispute that an injury in this area could only have been caused by an act of malpractice, Supreme Court's decision to set aside the verdict is affirmed. In view of this conclusion, we find it unnecessary to review the evidence concerning the other claims of malpractice.

Crew III, J.P., Peters, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, with costs.