■ MARIA VELASQUEZ, Individually and as Parent and Guardian of YVONNETTE PRIETO, an Infant, Appellant, v DAVID S. SKORY, Individually and Doing Business as PRIMARY CARE OB/GYN, et al., Respondents. [857 NYS2d 735]—

Rose, J.

Plaintiff, on behalf of herself and her infant daughter, commenced this medical malpractice action against, among others, defendant David S. Skory (hereinafter defendant), an obstetrician. Briefly stated, plaintiff alleged that shortly before her due date, she presented with physical characteristics which should have led defendant to diagnose her fetus as macrosomic (abnormally large for the gestational age), a condition that increases the risk of injury during vaginal delivery. When defendant subsequently performed a vaginal delivery, plaintiff's child became stuck and sustained injuries including shoulder dystocia and brachial plexus. At trial, the parties presented conflicting expert testimony as to whether defendant had deviated from accepted standards of medical care in failing to diagnose macrosomia and in delivering her child vaginally rather than by cesarean section. At the end of the trial, Supreme Court's jury verdict sheet asked a single question as to defendants' liability: "Was it a deviation below the standard of acceptable obstetrical care . . . for defendant . . . not to have requested the consent of plaintiff . . . to perform a [c]esarean section to deliver her child?" The jury answered "No," returning a verdict in favor of defendants.

On appeal, plaintiff argues that Supreme Court erroneously failed to charge informed consent and ask whether this and other omissions by defendant were deviations from the standard of medical care. Initially, we note that the record does not include a transcript of the charge conference and, thus, we cannot know what charges plaintiff requested or the court's reasons for denying them. The record, however, does include a discussion following summations during which *defendants'* counsel requested a charge on informed consent and plaintiff's counsel neither joined in that request nor objected to its omission. Rather, plaintiff's counsel opposed any change to Supreme Court's liability question other than to renew a request that there be separate, additional questions for each of the other alleged deviations identified by plaintiff's expert. Thus, plaintiff's challenge as to informed consent was waived by her failure to object before the jury began its deliberations (*see Postlethwaite v United Health Servs. Hosps.*, 5 AD3d 892, 894 [2004]; *Brown v County of Albany*, 271 AD2d 819, 821 [2000], *lv denied* 95 NY2d

767 [2000]; *Horner v Way*, 257 AD2d 819, 820 [1999]). In any event, were we to consider the issue, we would find that Supreme Court did not err. As the court noted, the pertinent deviation was not a failure to give plaintiff sufficient information to consent to a vaginal delivery, but the complete failure to offer a cesarean section as an alternative.

Nor did Supreme Court err in refusing to ask the jury additional questions as to other deviations. Citing the testimony of her medical expert, plaintiff argues that defendant also failed to monitor how well plaintiff was controlling her diabetes, failed to diagnose her child as macrosomic, failed to recognize the increased risk of shoulder dystocia during a vaginal delivery due to macrosomia and failed to discuss that risk with plaintiff. As for the failure to monitor plaintiff's diabetes, the record makes clear that this omission was only relevant because proper monitoring would have given defendant an additional reason to predict macrosomia. It was the macrosomia that increased the risk of shoulder dystocia, giving rise to defendant's obligation to discuss that risk with plaintiff. In support of this conclusion, plaintiff's medical expert opined that defendant should have made the diagnosis of macrosomia and, if it had been made, a cesarean section would have been the medically recommended means of delivery, subject to obtaining plaintiff's consent, because it would have avoided the risks associated with macrosomia. Thus, the failure to diagnose had no causal connection with the child's injuries separate from defendant's failure to seek to perform a cesarean section. Stated differently, the various omissions do not constitute separate theories of malpractice, but are interrelated deviations which, when taken together, all led to the requirement to discuss a cesarean section with plaintiff (*see Knish v Meehan*, 291 AD2d 647, 650 [2002]).

The jury, by answering the question posed by Supreme Court in the negative, implicitly found no deviation in defendant's failure to diagnose macrosomia and, since there was expert testimony presented by defendant supporting that conclusion, we cannot agree with plaintiff that the failure to diagnose was a separate deviation requiring a separate question (*compare Cicione v Meyer*, 33 AD3d 646, 648 [2006]) or that the evidence so preponderated in favor of plaintiff that the jury's verdict could not have been reached on any fair interpretation of the evidence (*see Grassi v Ulrich*, 87 NY2d 954, 956 [1996]; *Postlethwaite v United Health Servs. Hosps.*, 5 AD3d at 894; *Fridovich v Meinhardt*, 247 AD2d 791, 792 [1998]).

Mercure, J.P., Peters, Carpinello and Kavanagh, JJ., concur. Ordered that the order and judgment is affirmed, with costs.