Prediletto v Syed (2018 NY Slip Op 08228)





Prediletto v Syed


2018 NY Slip Op 08228


Decided on November 29, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 29, 2018

526729

[*1]FRANCIS A. PREDILETTO et al., Appellants,
v
IFTIKHAR ALI SYED, Respondent, et al., Defendants.

Calendar Date: October 10, 2018

Before: Garry, P.J., Devine, Aarons and Pritzker, JJ.


The Mills Law Firm, LLP, Clifton Park (Christopher K. Mills of counsel), for appellants.
Maynard, O'Connor, Smith & Catalinotto, LLP, Albany (Robert A. Rausch of counsel), for respondent.



MEMORANDUM AND ORDER
Garry, P.J.
Appeal from an order of the Supreme Court (Buchanan, J.), entered September 26, 2017 in Schenectady County, which denied plaintiffs' motion to set aside the verdict in favor of defendant Iftikhar Ali Syed.
In February 2012, defendant Iftikhar Ali Syed (hereinafter defendant) performed a laparoscopic sigmoid resection on plaintiff Francis A. Prediletto to alleviate his chronic recurrent diverticulitis. During the surgery, defendant removed a damaged portion of the sigmoid colon and performed a procedure known as an anastomosis to reconnect the healthy portions of the colon. Thereafter, a leak developed at the site of the anastomosis. As a result, Prediletto suffered abdominal and pelvic sepsis, fecal peritonitis and early renal failure. He required multiple additional surgeries and sustained serious injuries. Prediletto and his wife, derivatively, commenced this action asserting, among other things, medical malpractice. Following a two-week trial, the jury rendered a verdict in favor of defendant. Plaintiffs then moved to set aside the verdict. Following oral argument, Supreme Court denied the motion and dismissed plaintiffs' complaint. Plaintiffs appeal.
Plaintiffs first contend that Supreme Court should have granted their motion to set aside the verdict as it was contrary to the weight of the evidence. A verdict may not be set aside on this basis "unless the evidence so preponderated in favor of the moving party that it could not have been reached on any fair interpretation of the evidence" (Killon v Parrotta, 28 NY3d 101, 107-108 [2016] [internal quotation marks, brackets and citation omitted]; accord Blanchard v Chambers, 160 AD3d 1314, 1315 [2018]). In this medical malpractice action, it was plaintiffs' burden to prove that "defendant deviated from acceptable medical practice, and that such deviation was a proximate cause of [Prediletto's] injury" (Mazella v Beals, 27 NY3d 694, 705 [2016]; accord Gallagher v Cayuga Med. Ctr., 151 AD3d 1349, 1351 [2017]).
As a preliminary explanatory note, the trial evidence established that two forms of anastomosis may be used in colon resection procedures, depending on anatomical and other considerations. Here, defendant used a side-to-end anastomosis, in which the end of one section is connected to an opening created by the surgeon in the side of the other section, and the "free end," or remaining open end of the second section, is closed off separately. The parties' dispute centered upon whether defendant deviated from accepted standards of practice in testing the anastomosis for leaks during this surgery.[FN1]
Plaintiff's expert, Michael Leitman, a physician and surgeon, testified that the applicable standard of care required the use of both saline solution and pressurized air to test a colon anastomosis for leaks. He stated that air testing should be carried out by using a proctoscope to inject pressurized air into the colon while the colon is submerged in saline, which would cause air bubbles to appear in the saline if leaks were present. Leitman noted that defendant's surgical notes indicated that defendant had conducted saline testing, but failed to mention any air testing. He further noted that defendant had testified during his deposition that his surgical notes were incomplete and that he had, in fact, conducted air testing by using a syringe to introduce pressurized air into the anastomosis area through the free end of the colon before that end was separately closed. Leitman opined that this method did not comply with the applicable standard of care, and that defendant had deviated from the standards by failing to test the anastomosis with pressurized air, by failing to use a proctoscope for this testing, and by failing to pressurize the bowel under saline during testing to ascertain that the surgical area was leak free. He opined that these deviations were a substantial factor in causing Prediletto's injuries.[FN2]
On cross-examination, Leitman stated that the use of a syringe to inject air into the colon was not in itself a departure from the standard of care, but that to do so in a side-to-end anastomosis when the free end of the colon had not yet been closed was inadequate because that closure, too, needed to be tested for leaks. He conceded that defendant had testified that he had separately tested this portion of the colon after closing the opening by squeezing the colon to force air against the closure, and he acknowledged that this method would "theoretically" put pressure on the closure. However, Leitman testified that it would not generate the same type of air pressure available from the use of a proctoscope. Finally, he acknowledged that anastomosis leaks are a common risk of colon resection surgery and can occur in the absence of malpractice.
Defendant testified that, after creating the anastomosis, he tested it for leaks using an irrigating syringe. He described the testing procedure that he had followed in detail, stating that, before removing the diseased section of colon and closing the free end where it had been removed, he used a syringe to introduce saline into the bowel through an opening that he had created in the part of the colon that he intended to remove, while watching for leaks in the distended area around the anastomosis [FN3]. He likewise used the syringe to conduct air pressure testing by filling the abdominal cavity with saline, submerging the anastomosis area under the saline and then using the syringe to introduce pressurized air into that area while watching for air bubbles. He testified that he saw no sign of leaks or air bubbles during this process. He further testified that, after completing the testing and closing off the free end of the colon, he tested the new closure for leaks by submerging that part of the bowel in saline, forcing air that remained in [*2]the colon against the closure by squeezing with his hands, and watching the closure for air bubbles.
Defendant disagreed with Leitman's testimony that the applicable standard of care required using a proctoscope, stating that the procedure he followed complied with the standard of care and that a proctoscope did not have the length or the appropriate connection to push air to the location in this surgery. He testified that a sigmoidoscope could be used for this purpose, that he sometimes used one when he was not satisfied with the results of syringe testing, and that his choice as to the manner of testing depended on the location of the anastomosis and other circumstances. In Prediletto's case, defendant said that he chose to use a syringe based upon the location of the anastomosis, which permitted him to see and examine the area during the testing. He did not then conduct additional testing with a sigmoidoscope because he was satisfied with the results of his syringe testing.
Defendant acknowledged that his surgical notes did not indicate that he had used air to test the anastomosis, but stated that this omission was an error. He testified that he remembered carrying out the procedure and was "a hundred percent certain" that he had used both air and saline to test for leaks. He further testified that Prediletto did not show symptoms consistent with an anastomotic leak during the first few days following his surgery. Finally, he stated that anastomotic leaks are a common risk of colon resection procedures and can occur without malpractice, that he regularly performed this procedure, and that he had above average clinical results.
Barbara Brazis, a physician and general surgeon, gave expert testimony on defendant's behalf. She stated that various methods may be used to conduct air testing of a side-to-end anastomosis, depending on such circumstances as anatomical considerations and the preferences of the surgeon. She stated that the standard of care did not require the use of a proctoscope or a sigmoidoscope in every instance, opining that the location of a patient's anastomosis could limit the available forms of testing as it might not always be feasible to push air upwards from the anus for this purpose. Brazis opined that this anastomosis was located too far from the rectum for use of a sigmoidoscope, and that the method used by defendant — introducing air and saline from above, through the free end of the resected colon, rather than from below — would be the method chosen by many surgeons under those circumstances. Brazis opined that the testing method used by defendant complied with the applicable standard of care. She further opined that defendant's failure to include air testing in the operative note was not a violation of the standard of care, as such notes need not include every detail of the procedure. Brazis testified that an anastomotic leak can develop gradually after surgery even when testing during surgery indicated that there was no leak. She described potential causes for a leak other than malpractice and stated that the existence of a leak does not, without more, indicate that surgery or testing was improperly performed. She opined that the applicable standard of care was to test the anastomosis to the surgeon's satisfaction and did not necessarily require the use of both saline and air.
Plaintiffs question the credentials of defendant's expert and assert that their expert was more highly qualified to render an opinion about the standard of care in anastomosis testing. However, they made no claim at trial that Brazis should not have been qualified to render an expert opinion (see Matter of April WW. [Kimberly WW.], 133 AD3d 1113, 1116 [2015]), and they raise no such argument now. The jury had an opportunity to consider and weigh plaintiffs' arguments about the experts' relative qualifications when they were raised at trial. Likewise, plaintiffs' arguments about claimed inconsistencies in defendant's testimony and the alleged impossibility of the testing method that he described were raised at trial and fully explored on cross-examination. In this Court's review of a jury verdict, "considerable deference must be accorded to the jury's interpretation of the evidence and resolution of credibility issues, including those created by the conflicting opinions of medical experts" (Hess v Dart, 282 AD2d 810, 811 [2001]; accord Harris v Parwez, 13 AD3d 675, 677 [2004]). We are unpersuaded that the verdict was not supported by a preponderance of the evidence, and do not disturb Supreme Court's denial of plaintiffs' motion to set it aside (see Swartz v St. Mary's Hosp. of Amsterdam, 101 AD3d [*3]1273, 1276 [2012], lv denied 21 NY3d 859 [2013]; Biello v Albany Mem. Hosp., 49 AD3d 1036, 1037-1038 [2008]).
Plaintiffs next contend that a new trial is required because Supreme Court erred when it presented the jury with a single question on the verdict sheet as to whether defendant departed from applicable standards of care in performing the anastomosis and failed to include an additional question that separately addressed his testing of the anastomosis. "[W]here there is sufficient evidence to support a plaintiff's cause of action pursuant to a particular theory of negligence, it is error to deny a request by the plaintiff to submit an interrogatory to the jury regarding that theory" (Abato v Beller, 122 AD3d 554, 555 [2014]; see Paterno v Strimling, 107 AD3d 1233, 1234 [2013]; Beizer v Schwartz, 15 AD3d 433, 434 [2005]). When such an error occurs, a new trial is required (see Abato v Beller, 122 AD3d at 555; Shinder v Altorki, 309 AD2d 799, 799 [2003]).
We first address whether plaintiffs preserved this issue by raising a specific timely objection. A challenge to a verdict sheet must be raised before the jury begins its deliberations (see Brown v Dragoon, 11 AD3d 834, 835 [2004], lv denied 4 NY3d 710 [2005]). Here, plaintiffs had timely submitted a proposed verdict sheet that included separate questions about the performance and testing of the anastomosis, as well as a third question about defendant's postsurgical management. The record does not include a transcript of the charge conference. The verdict sheet that Supreme Court presented to counsel thereafter combined plaintiffs' proposed two questions about performance and testing into one question asking, "Did [defendant] depart from accepted standards of medical care in the manner in which he performed the anastomosis?" In response to the court's inquiry as to the adequacy of this verdict sheet, plaintiffs' counsel requested that the court explain that the question about performance of the anastomosis included the testing issue. Counsel noted that plaintiffs' expert had addressed the testing, arguing that the jury would not understand that testing was included in the performance question without an explanation. Defendant's counsel objected to this request. The court declined to provide the requested explanation, stating that performance included improper testing. Plaintiffs' counsel then advised that he would "take an exception." We find that this exchange, combined with plaintiffs' submission of a verdict sheet containing separate questions, was sufficient to preserve the issue of the adequacy of the verdict sheet for review (see CPLR 4111 [b]; compare Kayser v Sattar, 57 AD3d 1245, 1247 [2008]).
Nevertheless, we find no error. Plaintiffs now contend that separate questions about defendant's performance and testing should have been included on the verdict sheet. However, review of the trial transcript reveals that plaintiffs did not in fact present any proof of malpractice related to the performance of the anastomosis other than the alleged failure to test it properly. Their expert identified only two alleged departures: the testing failure, and the postsurgical delay in recognizing and properly treating the anastomotic leak. Asked whether he had identified any other departures by defendant, the expert responded, "No." Plaintiffs submitted no other evidence of any departures from the standard of care by defendant. The summation by plaintiffs' counsel was limited to arguments related to the adequacy of the testing. Under these circumstances, the evidence would not have supported a separate question about performance (see Velasquez v Skory, 49 AD3d 1056, 1058 [2008]). Thus, Supreme Court did not err in failing to include separate questions about the performance and the testing of the anastomosis on the verdict sheet.
Plaintiffs further contend that a new trial is required because the jury was confused by the language used in the single question and, specifically, by the failure to specify that testing was included. During deliberations, the jury asked for clarification as to whether the reference to performance on the verdict sheet meant "just the anastomosis alone or the testing as well[?] Does it cover the whole sigmoid colon resection procedure[?]" When Supreme Court and counsel discussed this note, plaintiffs' counsel reminded the court that he had expressed concern over the need for an explanation of this issue during the discussion about the verdict sheet. The court opined that the question about performance included the testing. Plaintiffs' counsel agreed, saying, "That's exactly what our expert testified to." The court then stated that it intended to [*4]instruct the jury that the performance question "include[d] everything." Defendant's counsel objected, asserting that the jury should not be given any additional explanation, but plaintiffs' counsel raised no objection. The court then instructed the jury that the performance question "include[d] both components, performance of the anastomosis, as well as the testing procedure. That's all included within that question." The jury confirmed that this response answered its question and, shortly thereafter, requested a readback of defendant's testimony about the anastomosis testing.
Accordingly, plaintiffs' claim that Supreme Court's response to the jury's question was inadequate is unpreserved, as counsel not only failed to object, but specifically agreed that the court's interpretation of the question was consistent with the testimony of plaintiffs' expert (see Beck v Spinner's Recreational Ctr., Inc., 78 AD3d 1695, 1697 [2010]; Bennett v Wolf, 40 AD3d 274, 275 [2007], lv denied 9 NY3d 818 [2008]). In any event, we find no merit in plaintiffs' claim as to jury confusion. Contrary to plaintiffs' argument, the response could not have led the jury to improperly conflate two separate theories of malpractice related to the performance of the anastomosis. As previously noted, two such separate theories were not presented to the jury; plaintiffs' only proof of malpractice arising from defendant's performance of the anastomosis related directly to the alleged improper testing. Thus, even if plaintiffs had preserved their contention that the court should have instructed the jury that the question included "either" the performance of the anastomosis or the testing, rather than "both," we would not have found that such an instruction was consistent with the evidence.
We note that the jury confirmed that Supreme Court's response answered its question and raised no further inquiries about the language of the performance question. Under these circumstances, we do not find that continued confusion about the inclusion of testing in the question was revealed by the length of the jury's deliberations, a later note to the court indicating that the jury was having difficulty reaching agreement on the performance question, or by the fact that its ultimate verdict on that issue was not unanimous. These factors are equally consistent with the conclusion that the jury understood the court's explanation and deliberated carefully about the testing issue before reaching its verdict. As nothing in the record "demonstrates substantial confusion among the jurors in reaching a verdict," a new trial is not required (Kelly v Greitzer, 83 AD3d 901, 902 [2011] [internal quotation marks and citations omitted]; see Turturro v City of New York, 127 AD3d 732, 738 [2015], affd 28 NY3d 469 [2016]; Mosher v Murell, 295 AD2d 729, 731 [2002], lv denied 98 NY2d 613 [2002]; Johnson v Village of Saranac Lake, 279 AD2d 784, 786 [2001]).
Devine, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: Plaintiffs also contended at trial that defendant departed from applicable standards of care in his postsurgical management of Prediletto's condition, but as the appellate contentions are limited to the testing of the anastomosis, we deem arguments related to such issues to be abandoned (see generally Suarez v State of New York, 60 AD3d 1243, 1243 n [2009]).

Footnote 2: Leitman also testified that the failure to include the air testing in the surgical note was a deviation from the standard of care, but he did not opine that this failure was a proximate cause of Prediletto's injuries.

Footnote 3: Defendant testified that he used non-crushing clamps to seal off the area that was being tested.