Zapata v Yugo J & V, LLC (2020 NY Slip Op 02687)





Zapata v Yugo J & V, LLC


2020 NY Slip Op 02687


Decided on May 7, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 7, 2020

527621

[*1]Walberto Zapata et al., Respondents,
v
Yugo J & , LLC, Appellant, et al., Defendant.

Calendar Date: February 18, 2020

Before: Egan Jr., J.P., Lynch, Mulvey, Devine and Colangelo, JJ.


Law Offices Brian P. Rourke, PC, Liberty (Troy J. Johnstone of counsel), for appellant.
Walberto Zapata and Joanne Zapata, Monticello, respondentspro se.



Egan Jr., J.P.
Appeal from a judgment of the Supreme Court (Schick, J.), entered August 1, 2018 in Sullivan County, upon a verdict rendered in favor of plaintiffs.
In 2009, defendant John Nikic purchased a four-unit apartment building located in the Town of Fallsburg, Sullivan County for the sum of $20,000. In 2010, Nikic transferred ownership of the property to defendant Yugo J & V, LLC (hereinafter Yugo), whose members were Nikic and a friend. In March 2014, plaintiffs were injured when, after visiting a friend at the property, a second-floor deck they were on collapsed, causing them to fall approximately 15 feet to the ground. Plaintiffs thereafter commenced this negligence action against defendants to recover damages for their injuries. Following a bifurcated trial solely on the issue of liability, a jury returned a verdict in favor of plaintiffs, finding Yugo 100% liable.[FN1] Following a second trial on the issue of damages, the jury awarded plaintiff Walberto Zapata $100,000 for past pain and suffering, $150,000 for future pain and suffering over a period of 25 years, $123,000 for medical expenses and $25,000 for loss of consortium. The jury awarded plaintiff Joanne Zapata $200,000 for past pain and suffering, $200,000 for future pain and suffering over a period of 25 years, $288,000 for medical expenses and $50,000 for loss of consortium. Yugo appeals.
Yugo contends that the jury's verdict was not supported by the weight of the evidence. We disagree. "A verdict may be successfully challenged as against the weight of the evidence if it can be shown that a preponderance of the proof presented at trial so strongly favored [the losing party's] case that a contrary verdict could not have been reached upon any fair interpretation of that evidence" (Todt v Schroon Riv. Campsite, 281 AD2d 782, 782 [2001] [internal quotation marks and citations omitted]; see Killon v Parrotta, 28 NY3d 101, 107 [2016]; Johnstone v First Class Mgt. of N.Y., LLC, 138 AD3d 1222, 1223 [2016]). Here, even assuming, without deciding, that Yugo did not have actual or constructive knowledge of the defective nature of the deck, Supreme Court charged the jury with, among other charges, the doctrine of res ipsa loquitur.[FN2] Res ipsa loquitur means "the thing speaks for itself" (Kambat v St. Francis Hosp., 89 NY2d 489, 496 [1997] [internal quotation marks and citation omitted]), and the doctrine permits a jury, in certain circumstances, to "infer negligence merely from the happening of an event and the defendant's relation to it" (id. at 494; see Dermatossian v New York City Tr. Auth., 67 NY2d 219, 226-227 [1986]). "To be entitled to a res ipsa loquitur jury charge, a plaintiff must establish (1) that the injurious event is of a kind that ordinarily does not occur in the absence of someone's negligence, (2) that the event was caused by an agency or instrumentality within the exclusive control of the defendant and (3) that the event was not due to any voluntary action or contribution on the part of the plaintiff" (Elsawi v Saratoga Springs City Sch. Dist., 179 AD3d 1186, 1187 [2020] [internal quotation marks and citations omitted]).
Here, neither plaintiffs nor Yugo proffered any explanation as to why the deck collapsed; however, there is no requirement that the specific cause of an accident be established to invoke the doctrine (see Abbott v Page Airways, 23 NY2d 502, 512-513 [1969]; Elsawi v Saratoga Springs City Sch. Dist., 179 AD3d at 1188). As relevant here, common experience informs us that a deck being put to its regular and intended use does not ordinarily collapse in the absence of negligence and, given that no credible evidence was set forth demonstrating that plaintiffs were contributorily negligent in causing the collapse, we find that the first and third prongs of the doctrine were readily established (see Elsawi v Saratoga Springs City Sch. Dist., 179 AD3d at 1187; Dawson v National Amusements, 259 AD2d 329, 330-331 [1999] Finocchio v Crest Hollow Club at Woodbury, 184 AD2d 491, 492-493 [1992]; see generally Kambat v St. Francis Hosp., 89 NY2d at 495). With respect to the second prong, exclusive control, plaintiffs were not required to "eliminate every alternative explanation for the [deck collapse], but only to demonstrate that the likelihood of causes other than [Yugo's] negligence is so reduced that the greater probability lies at [Yugo's] door, rendering it more likely than not that the injury was caused by [Yugo's] negligence" (Norton v Albany County Airport Auth., 52 AD3d 871, 875 [2008] [internal quotation marks and citations omitted]; see Elsawi v Saratoga Springs City Sch. Dist., 179 AD3d at 1188).
The evidence at trial established that, on the evening in question, plaintiffs were celebrating their wedding anniversary and had been visiting a friend who resided in one of the two second-floor apartments within the subject building. As plaintiffs exited the second-floor apartment, they stepped out onto the second-story deck — the only ingress and egress to the second-story apartments — and the deck collapsed beneath them, causing them to fall 15 feet onto the concrete pad below.
The deck had been under the care and control of Yugo since 2010, when it acquired title to the property. Nikic testified that he was the sole person responsible for the maintenance and inspection of the property and "continuously checked" it between 2009, when he first purchased it, through the time of the accident.[FN3] Nikic acknowledged that he never performed any maintenance on the deck during this time period and never saw "any metal joist hangers underneath the deck supporting it." Thus, although no testimony was offered regarding the specific cause of the deck collapse, given the evidence introduced at trial — which included postaccident photographs of the deck — the issue was ultimately one of fact for the jury to decide, and, under the circumstances, the jury could reasonably have determined that Yugo exercised exclusive control over the deck such that the elements of the doctrine of res ipsa loquitur were satisfied (see Elsawi v Saratoga Springs City Sch. Dist., 179 AD3d at 1188; Mejia v Delgado, 160 AD3d 588, 588 [2018]; see also Marinaro v Reynolds, 152 AD3d 659, 661-662 [2017]; Herbst v Lakewood Shores Condominium Assn., 112 AD3d 1373, 1375 [2013]; compare Richardson v Simone, 275 AD2d 576, 578 [2000]). Accordingly, on the record before us, and deferring to the jury's credibility assessments, we do not find that "the evidence so preponderated in favor of [Yugo] that the verdict could not have been reached on any fair interpretation of the evidence" (Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995] [internal quotation marks, brackets and citations omitted]; see Tyrell v Pollak, 163 AD3d 1232, 1235 [2018]).
Turning to the issue of damages, we reject Yugo's contention that Supreme Court erred in not requiring expert testimony to prove plaintiffs' damages. Generally speaking, "expert testimony is appropriate when it serves to clarify an issue that is beyond the ken of the lay juror and calls for professional or technical knowledge" (Payette v Rockefeller Univ., 220 AD2d 69, 74 [1996]; see generally De Long v County of Erie, 60 NY2d 296, 307 [1983]). Here, there is no question that the injuries that plaintiffs' sustained were a direct result of the fall precipitated by the deck collapse (see Madsen v Merola, 288 AD2d 520, 521 [2001]). Moreover, plaintiffs' testimony regarding the nature and permanency of their injuries, coupled with the medical records introduced into evidence, were not beyond the competence of plaintiffs or the ordinary experience and knowledge of a lay jury so as to require expert testimony to render an appropriate damages award (see Payette v Rockefeller Univ., 220 AD2d at 74; compare Razzaque v Krakow Taxi, 238 AD2d 161, 162 [1997]).
We similarly reject Yugo's contention that the jury's award of damages was excessive. As relevant here, "a court may set aside a jury award of damages when that award deviates materially from what would be reasonable compensation" (Greblewski v Strong Health MCO, LLC, 161 AD3d 1336, 1339 [2018] [internal quotation marks and citations omitted]; see CPLR 5501 [c]; DeMarco v DeMarco, 154 AD3d 1226, 1228 [2017]). Initially, to the extent that Yugo challenges the award for past medical expenses to plaintiffs, Yugo's failure to include the relevant medical records and bills that were admitted as trial exhibits precludes this Court from engaging in meaningful and effective appellate review of this portion of the damages award (see CPLR 5526; Babayev v Kreitzman, 168 AD3d 655, 656 [2019]; Coello v Gonzalez, 96 AD3d 707, 707-708 [2012]).[FN4] With regard to the remaining damages' claims, the evidence at the trial established that, as a result of the deck collapse, Walberto Zapata suffered, among other injuries, various "burst fractures" in his spine, herniated and bulging discs in his lower lumbar region and scoliosis. After three days of being confined to a hospital bed following the accident, he was fitted with a hard plastic back/thigh body brace that enabled him to be somewhat mobile.[FN5] He was required to wear this brace until August or September 2014, when he was fitted with a softer, less restrictive back brace that he wore for an additional six months. Upon his discharge from the hospital, he engaged in physical therapy through September 2015. He testified that, as a result of his back injuries, he continues to be restricted in his ability to bend, lift and twist, he can no longer walk any extended distances, he has difficulty sleeping, he has needed to modify his job and household duties and he feels pressure, pain and discomfort in his back each and every day.
As a result of the deck collapse, Joanne Zapata suffered numerous injuries, including a fractured femur, hip and knee. She was airlifted to a hospital, where she underwent a 10 to 12-hour surgical procedure to insert two rods into her leg and reconstruct her knee, requiring approximately 200 staples to close the wound, causing permanent scarring. Following the surgery, she remained in the hospital for three weeks and was later discharged to a rehabilitation center. Her leg was placed into a brace and she was confined to a wheelchair for six months. Upon discharge, she received daily nursing care and regular physical therapy at her home for approximately four months. She testified that, due to her injuries, she suffers from chronic pain, can no longer work, travel, bike ride or take care of her grandchildren, as she used to, and requires the use of a cane or a brace to walk. Given the evidence presented at trial, and according deference to the jury's damages assessment, we cannot say that the jury's award of damages to plaintiffs for past and future pain and suffering falls outside the range of reasonable compensation (see CPLR 5501 [c]; DeMarco v DeMarco, 154 AD3d at 1228; Purkiss-Riddle v New York City Tr. Auth., 89 AD3d 1001, 1002 [2011]; Kithcart v Mason, 51 AD3d 1162, 1164-1165 [2008]; Acton v Nalley, 38 AD3d 973, 976-977 [2007]; Starr v Cambridge Green Homeowners Assn., 300 AD2d 779, 781-782 [2002]) and, therefore, we decline to disturb it.
Yugo's contentions that the jury charge and verdict sheet at the first trial on liability were flawed were not preserved for our review, as Yugo made no objection at either the charge conference or prior to submission of the case to the jury (see Towne v Kingsley, 163 AD3d 1309, 1312 [2018]; Brown v Dragoon, 11 AD3d 834, 835 [2004], lv denied 4 NY3d 710 [2005]), and it failed to object or take proper exception from either Supreme Court's refusal to charge comparative fault or its issuance of a res ipsa loquitur charge to the jury (see CPLR 4017, 4110-b, 5501 [a] [3]; Klotz v Warick, 53 AD3d 976, 978-979 [2008], lv denied 11 NY3d 712 [2008]; Turner v Spaide, 108 AD2d 1025, 1026 [1985], lv denied 66 NY2d 601 [1985]). Moreover, "[a]lthough this Court has the power to order a new trial when an unpreserved error in a jury charge is fundamental," on the record before us, we perceive no such error (DeMarco v DeMarco, 154 AD3d at 1228 [internal quotation marks and citation omitted]; see Towne v Kingsley, 163 AD3d at 1312). To the extent not specifically addressed, Yugo's remaining claims have been reviewed and found to be without merit.
Devine and Colangelo, JJ., concur.
Lynch, J. (concurring).
We respectfully concur. We write separately for it is our view that defendant Yugo J & V, LLC (hereinafter Yugo) and defendant John Nikic had, at a minimum, constructive notice of the defective condition of the deck. Nikic, who is a member of Yugo, purchased this property at a tax sale in 2009 for $20,000 and transferred deed title to Yugo in 2010. Nikic testified that he regularly inspected the property, including the deck. He also performed maintenance on the property but not on the deck. Notably, the code enforcement records for this property were received into evidence. Those records show that no certificate of occupancy had been issued for the property. On the contrary, a do-not-occupy notice was issued in 2007. As pertinent here, in 2005, a violation was issued as to the defective condition of the deck. In her summation, plaintiffs' counsel explained, without objection, that the violation report indicated that the deck was pulling away from the wall and that there were no lag bolts securing the deck to the structure.
An owner has a duty to maintain his or her property in a reasonably safe condition (see Henry v Hamilton Equities, Inc., 34 NY3d 136, 142 [2019]; see also PJI 2:90). Generally, for liability to attach, an owner must have actual or constructive notice of an unsafe condition (see Walsh v Super Value, Inc., 76 AD3d 371, 375 [2010]; 1A NY PJI3d 2:90 at 634 [2019]). Such notice may be established by evidence that the condition existed for a long period of time (see Walsh v Super Value, Inc., 76 AD3d at 375). Here, Nikic and Yugo owned the property for five years and, by his own account, Nikic inspected the deck regularly but made no deck repairs. Considering that the deck was cited as unsafe in 2005 for not being adequately secured to the structure, the jury could readily conclude that Yugo and Nikic had at least constructive notice of this unsafe condition and failed to take reasonable steps to have repairs made. For this failure, the jury could reasonably find that Yugo and Nikic were negligent. It follows that we need not apply the doctrine of res ipsa loquitor to sustain this verdict.
Mulvey, J., concurs.
ORDERED that the judgment is affirmed, with costs.



Footnotes

Footnote 1: During jury deliberations, following a colloquy with counsel for both parties in response to a note from the jury, Supreme Court dismissed the complaint against Nikic, individually.

Footnote 2: The lack of actual and/or constructive notice is not fatal because, when the doctrine of res ipsa loquitur is determined to be applicable, such notice is inferred (see Mejia v Delgado, 160 AD3d 588, 588 [2018]).

Footnote 3: Moreover, according to Nikic, the second-floor apartments were not occupied at the time of the incident such that, if his testimony is believed, neither he nor Yugo ever acquiesced responsibility for the inspection, maintenance or repair of the deck to a tenant or other third party (compare Harp v O'Neil, 256 AD2d 912, 912 [1998]).

Footnote 4: Yugo's counsel informed this Court that, despite his due diligence, he was unable to obtain a copy of the trial exhibits from either Yugo's former counsel or the Sullivan County Clerk's office.

Footnote 5: Walberto Zapata testified that, while in the hard brace, he required the help of his son or daughter's boyfriend to get in and out of the brace and perform other daily hygienic activities, such as showering and using the bathroom.