Wright v O'Leary (2022 NY Slip Op 00485)





Wright v O'Leary


2022 NY Slip Op 00485


Decided on January 27, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:January 27, 2022

532017 532153
[*1]Michael R. Wright, Appellant,
v
Marcus O'Leary et al., Respondents.

Calendar Date:November 17, 2021

Before:Egan Jr., J.P., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Maguire Cardona, PC, Albany (Molly C. Casey of counsel), for appellant.
Napierski, VanDenburgh, Napierski & O'Connor, LLP, Albany (Thomas J. O'Connor of counsel), for respondents.



Egan Jr., J.P.
Appeals (1) from a judgment of the Supreme Court (Mott, J.), entered August 5, 2020 in Columbia County, upon a verdict rendered in favor of defendants Paul O'Leary and Alexandra O'Leary, and (2) from an order of said court, entered July 22, 2020 in Columbia County, which denied a motion by plaintiff to set aside the verdict.
In January 2015, the 16-year-old plaintiff was injured when a John Deere Gator Utility Vehicle (hereinafter the Gator) in which he was a passenger tipped over while being operated by the 14-year-old driver, defendant Marcus O'Leary (hereinafter defendant). Plaintiff's parents, individually and on his behalf, thereafter commenced this negligence action against defendant and his parents, defendant Paul O'Leary and defendant Alexandra O'Leary, who owned the Gator and allowed defendant to use it.[FN1] Following joinder of issue and a motion for summary judgment by defendants (172 AD3d 1495 [2019]), the matter proceeded to a jury trial on the negligence claims against defendant and his parents. The claim against Alexandra O'Leary was dismissed on consent and, at the trial's conclusion, the jury returned a verdict finding that defendant was not negligent in operating the Gator and that Paul O'Leary was not negligent in allowing him to do so. Plaintiff appeals from that verdict as well as the denial of the ensuing motion to set it aside, focusing upon the jury's finding that defendant was not negligent.[FN2]
We affirm. Initially, we reject plaintiff's assertion that the verdict was against the weight of the evidence. A jury verdict, especially when it is rendered in favor of a defendant in a negligence action, will not be disturbed unless the trial proof preponderated so heavily in favor of the losing party that the verdict "could not have been reached on any fair interpretation of the evidence" (Killon v Parrotta, 28 NY3d 101, 107-108 [2016] [internal quotation marks and citation omitted]; see Zapata v Yugo J & V, LLC, 183 AD3d 956, 957 [2020]; Harris v Parwez, 13 AD3d 675, 677 [2004]; Monahan v Devaul, 271 AD2d 895, 895-896 [2000]). Showing that a different verdict would have been reasonable will not suffice, as "the jury's 'verdict will be accorded deference if credible evidence exists to support its interpretation'" (Fallon v Esposito, 35 AD3d 1067, 1068 [2006], quoting Cocca v Conway, 283 AD2d 787, 788-789 [2001], lv denied 96 NY2d 721 [2001]; see Warner v Kain, 186 AD3d 1844, 1845 [2020]).
Notwithstanding the manufacturer's warnings that individuals his age should not drive it and may not be able to control it, there is no question that defendant was an experienced driver of the Gator on the day in question. Further, although he failed to ask his parents for permission to drive it on the day of the accident, he testified that it was understood that he could take it out to show friends around the family property. He did take plaintiff, a visiting friend, out for a ride. The two took turns driving the Gator in a hay field [*2]on the property and plaintiff, an experienced all-terrain vehicle and snowmobile rider, took the opportunity to do donuts and other maneuvers with it. Defendant testified that he had never done a donut before, plaintiff denied having ever seen him do one, and defendant tried his hand at a few when he got back behind the wheel. Defendant's testimony, as well as cell phone video footage shot by plaintiff and reviewed by plaintiff's expert, reflect that he performed those donuts at low speed.
The accident occurred as plaintiff and defendant were returning to defendant's home when defendant turned left and attempted to do another donut on a slight grade while plaintiff sat, unbelted, in the passenger seat. It is here that the accounts of plaintiff and defendant significantly diverge. Defendant indicated that he was not driving "that fast at all," while plaintiff testified that defendant was "more aggressive" and driving faster than he had been earlier. Defendant testified that plaintiff grabbed a handlebar at about forehead height and leaned out of the right side of the Gator during the turn, while plaintiff testified that he actually leaned left in an attempt to stabilize the Gator after it began leaning to the right. In any event, the Gator did tip over onto its right side and pinned plaintiff's ankle underneath it. Plaintiff's expert opined that the most likely explanation for that tip over was that defendant was driving in an unsafe manner by taking the turn too fast on a grade. He also acknowledged, however, that the Gator's stability was "impressive" and that a passenger behaving in the manner attributed to plaintiff by defendant would shift the Gator's center of gravity and make it more likely to tip.
The jury heard, in other words, conflicting testimony regarding how defendant was driving at the time of the accident, whether that driving was what led to the Gator tipping over and whether defendant had any reason to believe that his actions posed a risk of harm given the acknowledged stability of the Gator and the fact that he and plaintiff had already performed several donuts without incident. It was for the jury to resolve these factual questions and determine whether defendant "fail[ed] to use that degree of care that a reasonably prudent person would have used under the same circumstances" and engaged in conduct posing a reasonably foreseeable risk to others (PJI 2:10; see Havas v Victory Paper Stock Co., Inc., 49 NY2d 381, 388 [1980]; PJI 2:12).[FN3] It is worth reiterating that the "varying inferences [that] may be drawn from the facts and evidence" were for the jury to resolve, and its interpretation of the evidence is entitled to great deference (Rivera v New York City Tr. Auth., 77 NY2d 322, 329 [1991]; see Monahan v Devaul, 271 AD2d at 896). The mere fact that the accident occurred was an insufficient basis to impose liability and, deferring to the jury's resolution of the sharp factual conflicts here, a fair interpretation [*3]of the trial evidence supports its finding that plaintiff had not "establish[ed] that defendant[] [was] negligent" (Boyles v Lewis, 112 AD3d 1255, 1257 [2013], lv denied 22 NY3d 1192 [2014]; see Bongiorno v Snow, 256 AD2d 855, 856 [1998]; Doyle v Seney, 221 AD2d 828, 829 [1995]).
Finally, we have previously determined that the Gator "was not a motor vehicle within the meaning of Vehicle and Traffic Law § 125" (172 AD3d at 1496), and it follows that the provisions of Vehicle and Traffic Law § 1229-c requiring the use of seat belts in motor vehicles and barring evidence of a failure to do so on the issue of liability are inapplicable. The common law, in contrast to that statute, permitted defendants to argue that plaintiff's "failure to wear a seat belt" was a "cause of the accident" (Spier v Barker, 35 NY2d 444, 451 n 3 [1974]; see Costello v Marchese, 137 AD2d 482, 483 [1988]; Curry v Moser, 89 AD2d 1, 7-8 [1982]; compare Hamilton v Purser, 162 AD2d 91, 93 [1990]). Thus, Supreme Court did not abuse its discretion in denying plaintiff's motion in limine seeking to preclude evidence offered for that purpose (see Motta v Eldred Cent. Sch. Dist., 172 AD3d 1575, 1579 [2019]). Plaintiff's remaining contentions are either academic or lack merit.
Clark and Aarons, JJ., concur.
Reynolds Fitzgerald, J. (concurring in part and dissenting
in part).
We concur with that part of the majority decision as upholds the jury's verdict with respect to defendant Paul O'Leary. However, we respectfully dissent with respect to its holding that defendant Marcus O'Leary (hereinafter defendant) was not negligent.
Although it is a legal maxim that a jury's verdict will be accorded great deference, it is equally known that, on occasion, a jury gets it wrong. As relevant here, CPLR 4404 (a) provides that a court may order a new trial of a cause of action where the verdict is contrary to the weight of the evidence if "the proof so preponderated in favor of the unsuccessful party that the verdict could not have been reached on any fair interpretation of the evidence" (Matter of Grancaric, 68 AD3d 1279, 1280 [2009] [internal quotation marks and citations omitted; emphasis added]). In making this finding, the trial court is guided by its professional judgment and experience. Undoubtedly, this authority must be exercised with great caution, and we concur with the majority's conclusion that more than a showing that a different verdict would have been reasonable is necessary. However, based on defendant's own testimony, we believe that the jury's finding that he was not negligent is not supported by the weight of the evidence.
On the stand, defendant testified that he was 14 years old on the day of the accident, that he was operating the John Deere Gator Utility Vehicle (hereinafter Gator) and performing a "donut" at the time of the accident. He described a donut as "the action of turning the wheel of the vehicle while pressing the accelerator in order to get the [*4]back wheels to spin out." He stated that he knew that the Gator was not intended as a recreational vehicle and also testified that, although he was aware of the manufacturer's safety warnings pertaining to limitations on speed, the use of seat belts and the prohibition of anyone younger than 16 years old driving the vehicle, he disregarded many of those warnings at the time of the accident. Finally, he testified that, although he had always operated the Gator safely in the past, his parents were angry with him after this accident "because [he] was driving [the Gator] in a manner that was inconsistent with [his] entire past." When asked if this manner was unsafe, defendant simply stated "yes."
To reiterate, this is defendant's testimony. There is no conflicting testimony. There are no credibility or factual issues for the jury to resolve. It is certainly possible, given the record before this Court, that the jury could have found that defendant's negligence was not a proximate cause of plaintiff's injury, or that plaintiff's own comparative negligence accounted for the lion's share of his injuries. However, there is simply no fair interpretation of this testimony that leads to the finding that defendant was not negligent. As such, we find that the verdict as to him is against the weight of the evidence.
Colangelo, J., concurs.
ORDERED that the judgment and order are affirmed, with costs.



Footnotes

Footnote 1: Plaintiff's parents asserted a claim against defendant in their complaint but did not explicitly name him as a separate party in the caption. At trial, Supreme Court permitted the claim against him to proceed.

Footnote 2: During the pendency of these appeals, which were taken by plaintiff's parents, Supreme Court issued an order that substituted plaintiff as the sole party plaintiff and formally named defendant as a party defendant in this action. We refer to the parties in line with that amendment — arising from a stipulation of the parties intended to reflect the reality that plaintiff and defendant are now adults capable of advancing their own interests — and follow their lead in treating plaintiff as the appealing party.

Footnote 3: Contrary to plaintiff's suggestion, defendant's admission that Paul O'Leary was unhappy with him for driving the Gator in a manner that was unsafe did not compel a finding of liability given the questions as to how the accident occurred and whether the possibility of injury from defendant's conduct was foreseeable (see Cavuto v Lilledah, 161 AD2d 853, 853-854 [1990], lv denied 76 NY2d 710 [1990]).