Fitzpatrick v Tvetenstrand (2024 NY Slip Op 01956)

Fitzpatrick v Tvetenstrand

2024 NY Slip Op 01956

Decided on April 11, 2024

Appellate Division, Third Department

Garry, P.J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 11, 2024

535660

[*1]Bethany Fitzpatrick et al., Appellants,
v
Christian D. Tvetenstrand et al., Respondents.

Calendar Date:February 13, 2024

Before: Garry, P.J., Aarons, Reynolds Fitzgerald, Fisher and Powers, JJ.

Edward E. Kopko, Ithaca, for appellants.
Aswad & Ingraham, LLP, Binghamton (Mary E. Saitta of counsel), for respondents.

Garry, P.J.
Appeal from a judgment of the Supreme Court (Oliver N. Blaise III, J.), entered June 21, 2022 in Broome County, upon a verdict rendered in favor of defendants.
In April 2016, plaintiff Bethany Fitzpatrick consulted with defendant Christian D. Tvetenstrand, a general surgeon, about a potentially cancerous nodule on the left lobe of her thyroid. She was referred to Tvetenstrand by her endocrinologist after diagnostic testing revealed the possibility of surgical intervention to address the nodule. During their consultation, Tvetenstrand advised Fitzpatrick that he could perform a thyroidectomy, i.e., the removal of both the left and right lobes of her thyroid, and described some risks associated with that procedure. He did not, however, inform her of the possible alternative of performing a hemithyroidectomy, involving the removal of only the left lobe. Roughly two weeks later, Fitzpatrick arrived at the hospital for surgery. She signed a consent form, and Tvetenstrand performed a total thyroidectomy. Following surgery, Fitzpatrick suffered difficulty breathing and a soft voice. These conditions persisted, and it was later determined that her left vocal cord had been paralyzed. In February 2019, Fitzpatrick and her spouse, derivatively, commenced this action against defendants, asserting causes of action for medical malpractice and medical malpractice based upon a lack of informed consent. The action proceeded to trial and, at the close of proof, plaintiffs unsuccessfully moved for a partial directed verdict as to informed consent. The jury returned a verdict in favor of defendants, finding that Tvetenstrand did not depart from the standard of care in his treatment of Fitzpatrick and that, although he failed to provide her with appropriate information for purposes of her informed consent, a reasonably prudent person would have undergone the procedure. Plaintiffs appeal.
Plaintiffs contend that Supreme Court erred in denying their motion for a directed verdict. "A directed verdict pursuant to CPLR 4401 is appropriate when, viewing the evidence in a light most favorable to the nonmoving parties and affording such parties the benefit of every inference, there is no rational process by which a jury could find in favor of the nonmovants" (Peluso v C.R. Bard, Inc., 124 AD3d 1027, 1028 [3d Dept 2015] [internal quotation marks, brackets and citations omitted]; see DeGraff v Colontonio, 202 AD3d 1297, 1298 [3d Dept 2022], lv dismissed 39 NY3d 1150 [2023]). Three elements must be demonstrated to establish a claim based upon lack of informed consent; however, plaintiffs' motion was limited to the first element, and only that challenge is preserved for appellate review (see Miller v Carter, 212 AD3d 918, 920 [3d Dept 2023]). The first required element is "that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment, and the alternatives[*2], that a reasonable medical practitioner would have disclosed in the same circumstances" (Cole v Chun, 185 AD3d 1183, 1185 [3d Dept 2020] [internal quotation marks and citations omitted]; see Henderson v Takemoto, 223 AD3d 996, 1002 [3d Dept 2024]).
At trial, the parties introduced conflicting evidence and testimony as to whether Tvetenstrand had informed Fitzpatrick that injury to the recurrent laryngeal nerve was a risk of the procedure. As to possible alternatives to a total thyroidectomy, Tvetenstrand testified that he did not discuss same with Fitzpatrick but that, given her medical history, it was inadvisable to remove the left lobe of the thyroid — which preoperative testing suggested contained a potentially cancerous nodule — while leaving intact the nonfunctional right lobe, as doing so in this case presented an elevated risk of micrometastasis, or cancer spreading, to that tissue. Notably, the parties' respective medical experts agreed that a total thyroidectomy would be appropriate under these or similar circumstances, and Tvetenstrand further testified that his observations during surgery confirmed his opinion in this regard. Viewing the foregoing in the light most favorable to defendants, we agree that a jury could rationally conclude that Tvetenstrand had reasonably advised Fitzpatrick of a total thyroidectomy without presenting alternatives, and that he had appropriately informed her of the relevant risks attendant to said procedure (see D.Y. v Catskill Regional Med. Ctr., 156 AD3d 1003, 1005-1007 [3d Dept 2017]; Majid v Cheon-Lee, 147 AD3d 66, 71-72 [3d Dept 2016]). Accordingly, Supreme Court properly denied plaintiffs' motion for a directed verdict on this issue.
Plaintiffs further challenge the verdict as against the weight of the evidence. Preliminarily, we now join our colleagues in our sister Departments in concluding that plaintiffs were not required to preserve their weight of the evidence contention by moving to set aside the verdict upon that basis (see DeFisher v PPZ Supermarkets, Inc., 186 AD3d 1062, 1063 [4th Dept 2020]; Evans v New York City Tr. Auth., 179 AD3d 105, 109-111 [2d Dept 2019]; Sims v Comprehensive Community Dev. Corp., 40 AD3d 256, 258 [1st Dept 2007]; Mark C. Dillon, Prac Commentaries, McKinney's Cons Laws of NY, CPLR C4404:3). A trial court has the authority to order a new trial "on its own initiative" when the verdict is contrary to the weight of the evidence (CPLR 4404 [a]), and this Court's power "is as broad as that of the trial court" (Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499 [1983]). Although we believe it remains best practice for a party to challenge a verdict upon this basis before the trial court, in light of its superior opportunity to evaluate the proof and credibility of witnesses (see Richmor Aviation, Inc. v Sportsflight Air, Inc., 82 AD3d 1423, 1426 [3d Dept 2011]; Mazzariello v Davin, 252 AD2d 884, 885 [3d Dept 1998]), we nonetheless agree that [*3]this Court is fully empowered to "order a new trial where the appellant made no motion for that relief in the trial court" (Evans v New York City Tr. Auth., 179 AD3d at 110; accord DeFisher v PPZ Supermarkets, Inc., 186 AD3d at 1063). To the extent that our prior decisions have suggested otherwise, they should no longer be followed (see e.g. Durrans v Harrison & Burrowes Bridge Constructors, Inc., 128 AD3d 1136, 1139 [3d Dept 2015]; Papa v Kilroy, 24 AD3d 1088, 1089 [3d Dept 2005]; Lockhart v Adirondack Tr. Lines, 305 AD2d 766, 767 [3d Dept 2003]; Creamer v Amsterdam High School, 277 AD2d 647, 651 [3d Dept 2000]).
A jury verdict will not be set aside "unless the trial proof preponderated so heavily in favor of the losing party that the verdict could not have been reached on any fair interpretation of the evidence" (Wright v O'Leary, 201 AD3d 1280, 1281 [3d Dept 2022] [internal quotation marks and citations omitted], appeal dismissed 38 NY3d 972 [2022]; see Salovin v Orange Regional Med. Ctr., 174 AD3d 1191, 1192 [3d Dept 2019]). "Showing that a different verdict would have been reasonable will not suffice, as the jury's verdict will be accorded deference if credible evidence exists to support its interpretation" (Wright v O'Leary, 201 AD3d at 1281 [internal quotation marks and citations omitted]; see Endemann v Dubois, 207 AD3d 1009, 1010 [3d Dept 2022], lv denied 39 NY3d 909 [2023]). Pertinent here, "[t]o succeed on a medical malpractice claim, a plaintiff must ultimately show that the defendant had deviated from acceptable medical practice, and that such deviation was a proximate cause of the plaintiff's injury" (Mattison v OrthopedicsNY, LLP, 189 AD3d 2025, 2027 [3d Dept 2020] [internal quotation marks and citation omitted]; see D.Y. v Catskill Regional Med. Ctr., 156 AD3d at 1005). As to a cause of action for medical malpractice based upon a lack of informed consent, a plaintiff must demonstrate "(1) that the person providing the professional treatment failed to disclose alternatives thereto and failed to inform the patient of reasonably foreseeable risks associated with the treatment, and the alternatives, that a reasonable medical practitioner would have disclosed in the same circumstances, (2) that a reasonably prudent patient in the same position would not have undergone the treatment if he or she had been fully informed, and (3) that the lack of informed consent is a proximate cause of the injury" (Gilmore v Mihail, 174 AD3d 686, 688 [2d Dept 2019] [internal quotation marks and citations omitted]; see Cole v Chun, 185 AD3d at 1185).
In returning a verdict in favor of defendants, the jury found that Tvetenstrand did not depart from the standard of care in his treatment of Fitzpatrick and that, although he had failed to provide her with appropriate information before obtaining her consent for treatment, "a reasonably prudent person in [her] position at the time consent was given [would] have decided to undergo the operation." At trial, Ralph [*4]Doerr, a surgeon who testified on behalf of defendants, opined that a thyroidectomy was not only medically appropriate under the circumstances, but that Tvetenstrand had performed the procedure within the accepted standard of care. As to informed consent, it was undisputed that Tvetenstrand failed to discuss alternatives to a thyroidectomy with Fitzpatrick, and both parties' medical experts agreed that such failure was a departure from accepted medical practice. Fitzpatrick averred in her testimony that, had she been properly informed of potential alternatives and associated risks and benefits, she would not have consented to the thyroidectomy. Nevertheless, Doerr agreed with Tvetenstrand's assessment that a total thyroidectomy was "very well justified," because leaving intact the nonfunctioning right lobe presented a risk of cancer — which potential presence was indicated by preoperative testing — spreading to that tissue and surrounding lymph nodes. Moreover, William Kuhel, a surgeon testifying on behalf of plaintiffs whose video deposition was viewed by the jury, opined that, although he believed the risks of a total thyroidectomy outweighed its advantages, a reasonable patient knowing the risks and benefits presented here could have elected to undergo said procedure. In view of the foregoing, and deferring to the jury's credibility assessments and resolution of any conflicting testimony, we conclude that a fair interpretation of the evidence supports the jury's verdict (see Longtin v Miller, 133 AD3d 939, 941-942 [3d Dept 2015]; McElroy v Yousuf, 268 AD2d 733, 735-737 [3d Dept 2000]; Brandon v Karp, 112 AD2d 490, 492 [3d Dept 1985]; see also Marchione v State of New York, 194 AD2d 851, 854 [3d Dept 1993]).
Finally, we reject plaintiffs' contention that Supreme Court improperly instructed the jury that, in considering whether Tvetenstrand appropriately informed Fitzpatrick as to potential alternatives to a thyroidectomy for purposes of informed consent, defendants contended that "the information was in fact provided, or a reasonable medical practitioner would not provide such information to the patient in a case such as this" (emphasis added). The challenged language is wholly consistent with the relevant pattern jury instructions, corresponding to the elements of proof, and the parties' conflicting evidence on this issue presented an issue of fact for the jury to resolve such that the instruction was appropriate (see PJI 2:150A). We further find no basis in the record to support plaintiffs' contention that the court's instruction confused the jury; the jury did not evince confusion merely by requesting clarification as to the definitions of "standard of care" and "informed consent" (see Thomas v Samuels,60 AD3d 1187, 1188 [3d Dept 2009]; compare Figueroa-Burgos v Bieniewicz, 135 AD3d 810, 812 [2d Dept 2016]).
Aarons, Reynolds Fitzgerald, Fisher and Powers, JJ., concur.
ORDERED that the judgment is affirmed, with costs.