Pasternak v County of Chenango (2024 NY Slip Op 02109)

Pasternak v County of Chenango

2024 NY Slip Op 02109

Decided on April 18, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 18, 2024

535621
[*1]Steven T. Pasternak, Respondent- Appellant,
v
County of Chenango, Appellant-Respondent, et al., Defendants.

Calendar Date:February 20, 2024

Before:Garry, P.J., Egan Jr., Clark, Pritzker and Mackey, JJ.

Gerber Ciano Kelly Brady LLP, Garden City (Brendan T. Fitzpatrick of counsel), for appellant-respondent.
Conway & Kirby, PLLC, Delmar (Andrew W. Kirby of counsel), for respondent-appellant.

Clark, J.
Appeals (1) from a judgment of the Supreme Court (Jeffrey A. Tait, J.), entered May 24, 2023 in Chenango County, upon a verdict rendered in favor of plaintiff, (2) from an order of said court, entered May 31, 2022 in Chenango County, which denied a motion by defendant County of Chenango to set aside the verdict, and (3) from an order of said court, entered April 4, 2023 in Chenango County, which partially granted a motion by defendant County of Chenango to, among other things, reduce the statutory postverdict interest rate.
On August 18, 2012, plaintiff was riding a motorcycle on a portion of County Road 25 located within the Town of Columbus, Chenango County, when he lost control of the motorcycle and suffered various injuries. Thereafter, plaintiff commenced the instant action against, as relevant here, defendant County of Chenango (hereinafter defendant), alleging that defendant was responsible for maintaining the road in a safe condition and that its failure to do so was a cause of plaintiff's injuries.[FN1] The parties engaged in lengthy discovery and motion practice, including a motion for summary judgment, the denial of which we affirmed on appeal (156 AD3d 1007 [3d Dept 2017]). In anticipation of trial, defendant sought to use the doctrine of collateral estoppel to preclude plaintiff from introducing certain evidence or advancing certain arguments; specifically, defendant argued that, because a jury had convicted plaintiff of driving while intoxicated at the time of the accident (see Vehicle and Traffic Law § 1192 [3]), plaintiff should be precluded from presenting evidence contesting his intoxication and from arguing that he was not intoxicated at the time of the accident. Supreme Court (Burns, J.) denied such motion, finding that defendant had waived the affirmative defense of collateral estoppel when it failed to plead it in its answer or through a pre-answer motion to dismiss.
At the conclusion of trial on December 7, 2021, the jury returned a verdict in plaintiff's favor, finding that defendant was negligent in maintaining the road and that such negligence caused the accident that led to plaintiff's injuries. Although the jury also found that plaintiff was negligent, it did not find his conduct to be a substantial factor in causing the accident. The jury awarded damages for plaintiff's past medical expenses, past pain and suffering, past lost wages and future pain and suffering. Defendant moved to set aside the verdict as against the weight of the evidence, which motion Supreme Court (Tait, J.) denied. Thereafter, defendant moved to set the interest in the judgment to 0.31%, while plaintiff requested application of the statutory interest rate of 9%. Supreme Court granted the motion, finding that defendant had rebutted the presumptive maximum rate and that plaintiff had failed to present evidence to merit a rate higher than 0.31%. A judgment was entered incorporating such interest rate. Defendant appeals from the judgment and from the order [*2]denying its motion to set aside the verdict, while plaintiff appeals from the order setting the interest rate.
Initially, we reject defendant's argument that Supreme Court (Burns, J.) erred in denying its motion to preclude plaintiff from introducing evidence contravening his intoxication at the time of the accident and from making arguments to that effect. Failure to raise the affirmative defense of collateral estoppel in a responsive pleading or in a pre-answer motion to dismiss amounts to a waiver of such defense (see CPLR 3018 [b]; 3211 [a] [5]; [e]; David D. Siegel & Patrick M. Connors, New York Practice § 475 [6th ed, Dec. 2023 update]). Plaintiff's conviction predates defendant's answer, and defendant concedes that it did not plead the doctrine of collateral estoppel in its answer or amended answer. Having waived such affirmative defense, defendant could not then invoke collateral estoppel to narrow the issues presented to the jury by precluding plaintiff from presenting "any evidence or argument at trial alleging that he was not intoxicated" during the accident (see CPLR 3018 [b]; 3211 [a] [5]; [e]; see e.g. Farias-Alvarez v Interim Healthcare of Greater N.Y., 166 AD3d 945, 947 [2d Dept 2018], lv denied 32 NY3d 919 [2019]; Desautels v Desautels, 80 AD3d 926, 930 [3d Dept 2011]; Braunsdorf v Haywood, 295 AD2d 731, 732-733 [3d Dept 2002]). As such, Supreme Court properly denied the motion to preclude.
Next, defendant challenges the verdict as against the weight of the evidence. "A verdict may be successfully challenged as against the weight of the evidence if it can be shown that a preponderance of the proof presented at trial so strongly favored the losing party's case that a contrary verdict could not have been reached upon any fair interpretation of that evidence" (Zapata v Yugo J & V, LLC, 183 AD3d 956, 957 [3d Dept 2020] [internal quotation marks, brackets and citations omitted]; see Endemann v Dubois, 207 AD3d 1009, 1010 [3d Dept 2022], lv denied 39 NY3d 909 [2023]). "A jury's finding that a party was at fault but that such fault was not a proximate cause of the plaintiff's injuries is inconsistent and against the weight of the evidence only when the issues are so inextricably interwoven as to make it logically impossible to find negligence without also finding proximate cause" (Adami v Wallace, 68 AD3d 1397, 1398 [3d Dept 2009] [internal quotation marks, brackets and citations omitted]; accord C.T. v Board of Educ. of S. Glens Falls Cent. Sch. Dist., 179 AD3d 1198, 1199 [3d Dept 2020]). "Showing that a different verdict would have been reasonable will not suffice, as the jury's verdict will be accorded deference if credible evidence exists to support its interpretation" (Wright v O'Leary, 201 AD3d 1280, 1281 [3d Dept 2022] [internal quotation marks and citations omitted], appeal dismissed 38 NY3d 972 [2022]; see Streit v Katrine Apts. Assoc., Inc., 212 AD3d 957, 962 [3d Dept 2023]).
In arguing that the verdict is contrary to the weight [*3]of the evidence, defendant asserts that the jury found plaintiff negligent due to plaintiff having been intoxicated, speeding and following too closely. Although the verdict sheet reflects that the jury found plaintiff negligent, it does not specify the underlying factual determination. The uncontroverted evidence established that, on August 18, 2012, plaintiff attended a popular motorcycle race accompanied by several friends, where they consumed alcohol. In the early evening, plaintiff and two of his companions left the racetrack, each riding a motorcycle. As they traveled in tandem along the subject road, they hit an area of the road permeated with divots, potholes and dips, causing each of them to lose control of their motorcycles. Plaintiff's two companions regained control, but plaintiff was thrown off his motorcycle. Plaintiff's medical records show that, as a result of the accident, he was intubated and suffered numerous injuries, including a tear to the deltoid ligament of the ankle that required surgery, a scapular fracture, hearing loss and short-term memory loss, among others.
Plaintiff and his companions each admitted to having consumed a few beers at the racetrack.[FN2] The companions testified that they did not observe plaintiff stumbling, slurring his words or showing other signs of intoxication when the three left the racetrack. One companion further asserted that when he hit the divots and dips in the road, he was able to regain control due to his motorcycle's suspension, and that he was aware that plaintiff's motorcycle lacked such a forgiving suspension system. The same companion explained that he had always observed plaintiff to be a very good rider, and that plaintiff was not speeding. A freelance photographer who had attended the motorcycle race was riding his own motorcycle following behind plaintiff's group for several miles, and he observed that plaintiff was not speeding or otherwise operating his motorcycle in an unsafe manner. Plaintiff admitted that he made certain modifications to his motorcycle but asserted that it remained legal to drive and was not considered to be less safe than a standard model. He also admitted that he had been convicted of driving while intoxicated stemming from his operation of his motorcycle that evening. Plaintiff said that, due to memory loss from his injuries, he had no recollection of the accident; he recalls leaving the racetrack, then waking up in the hospital a few days later.
A nearby resident testified that the road had been in very poor condition for years and had severely worsened due to the heavy truck traffic associated with the operation of a nearby factory. She noted that, even if sober, the road's condition was so bad that she would be unable to maintain control on her own motorcycle. A civil engineering consultant testified that the subject road was more likely to sink and break apart because it was an "oil and stone" road, located in a wetland and subjected to heavy truck traffic[*4]. As a result, it required maintenance, such as fixing depressions and filling potholes, to be performed more frequently. The consultant inspected the road and observed it in a state of severe disrepair, noting that in nearly three decades of being a consultant he had only seen one other road in such poor condition. He specified that the subject road was very uneven, with divots and depressions of over an inch, and testified concerning various photographs that he took during the inspection that were admitted into evidence. The consultant also explained that someone driving east on the subject road, as plaintiff was, would have had a difficult time spotting these road hazards.
A security guard for the nearby factory testified that there was heavy truck traffic in the area coming and going from the factory. Just before the accident occurred, he saw three motorcycles and thought they were speeding. A paramedic who responded to the scene of the accident testified that he believed that plaintiff was intoxicated because he smelled of alcohol, was combative and swung his arms clumsily; however, he admitted that plaintiff's conduct also could have been caused by a head injury from the accident. A deputy sheriff testified that he believed that plaintiff was intoxicated, as plaintiff's motor coordination was impaired and a smell of alcohol emanated from his breath. At the hospital, the deputy sheriff arranged to have plaintiff's blood drawn, which resulted in a measurement of plaintiff's blood alcohol content (hereinafter BAC) at 0.14%. The deputy sheriff admitted to a number of issues with the blood test procedure, including that the test kit used had been expired for a few months. The deputy sheriff testified that he did not issue plaintiff a ticket for speeding, for following too closely or for defective motorcycle equipment.
The director of defendant's department of public works testified that he and his staff would conduct monthly visual inspections of every road under defendant's jurisdiction, but he admitted this was not consistently done; for example, he approximated that he only drove down the subject road once or twice in the seven months preceding the accident. These inspections were not documented and did not involve exiting the vehicle or taking objective measurements. The director also admitted that his department did not consider any standards to determine whether a road required repairs; rather, such decisions were made by him and his department. The director explained that the nearby factory was constructed in the mid-2000s and that he was aware that the subject road was damaged by construction traffic and further damaged by the heavy truck traffic involved in the regular operation of said factory. Yet, he admitted, the road had not undergone any repairs for at least a decade before the accident. The deputy director of defendant's department of public works added that, following the accident, he went to that portion of the subject road and [*5]stated that the road hazards did not "seem[ ] that serious." However, he admitted that he was not aware of any objective standards to determine whether a road needed repairs.
Defendant called a toxicology expert to testify, who opined that plaintiff's BAC was likely 0.18% at the time of the accident and that such level of intoxication likely affected plaintiff's reaction time, among other things. He also testified that this could have affected plaintiff's ability to respond and recover after hitting the road hazards. The toxicology expert also admitted that he was unaware of plaintiff's alcohol tolerance, which could impact his reaction time, and that it was possible that plaintiff's BAC reading could have been affected by shock, the medications that he was given following the accident or the expired test kit.
Defendant's contention that plaintiff's negligence was inextricably interwoven with the proximate cause of the accident is not supported by the record. Notably, even where a party is found to be negligent due to violation of a statute, proximate cause remains a question of fact to be decided by jury (see Reed v New York State Elec. & Gas Corp., 183 AD3d 1207, 1211 [3d Dept 2020]; see e.g. Doe v Langer, 206 AD3d 1325, 1332 [3d Dept 2022]; Holownia v Caruso, 183 AD3d 1035, 1037 [3d Dept 2020], lv denied 36 NY3d 902 [2020]). It is uncontroverted that plaintiff consumed alcohol in the hours before the accident and that he was charged with and convicted of driving while intoxicated. As previously noted, that conviction was not given the preclusive effect of collateral estoppel. The evidence of plaintiff's intoxication and conviction suffices to support the jury's finding that plaintiff was negligent, and it could have supported a finding that such negligence contributed to his own injuries (see CPLR 1411). However, the existence of this alternative reasonable outcome does not require setting aside the verdict. Here, multiple eyewitnesses testified that plaintiff was not exhibiting signs of intoxication when leaving the racetrack and that he was not operating the motorcycle in an unsafe manner. The jury also was presented with evidence that the road was in severe disrepair, and eyewitnesses observed that plaintiff only lost control when he encountered the divots and dips in the road, causing him to be launched off the motorcycle. Defendant's employees admitted that they were aware of the road's disrepair in the years preceding the accident but took no steps to repair such condition. Under the highly unusual circumstances of this case, a fair interpretation of the evidence presented could allow the jury to determine that defendant's negligence in failing to maintain the road was the sole proximate cause of plaintiff's injuries (see Nash v Fitzgerald, 14 AD3d 850, 851-852 [3d Dept 2005]; Barnes v County of Onondaga, 195 AD2d 1042, 1042-1043 [4th Dept 1993]; compare Sattar v City of New York, 201 AD3d 756, 758-759 [2d Dept 2022]; Adami v Wallace, 68 [*6]AD3d at 1399). As such, Supreme Court (Tait, J.) did not err in denying defendant's motion to set aside the verdict.
Next, we turn to plaintiff's appeal from the order setting the interest rate at 0.31%. Where a monetary judgment is issued against a defendant, the plaintiff is generally entitled to compensation in the form of interest from the moment the verdict is issued until the moment the judgment is paid (see CPLR 5002; 5003; Toledo v Iglesia Ni Christo, 18 NY3d 363, 369 [2012]; Mohassel v Fenwick, 5 NY3d 44, 51-52 [2005]). Where, as here, a judgment is made against a municipality, the interest rate imposed thereon shall not exceed the presumptively reasonable statutory rate of 9% per annum, but, ultimately, the rate imposed is a matter left to the sound discretion of the trial court (see General Municipal Law § 3-a [1]; City of Buffalo v Clement Co., 28 NY2d 241, 265-266 [1971]; cf. Rodriguez v New York City Hous. Auth., 91 NY2d 76, 80-81 [1997]; see also CPLR 5004 [a]). To rebut the presumptively reasonable statutory interest rate, a municipality "bears the burden of proffering substantial evidence that rates of return on both public and private investments during the relevant period are below [9%]"; if such statutory maximum is rebutted, the burden shifts to the plaintiff to proffer "evidence tending to show that a higher rate, up to the statutory maximum, is reasonable" (Denio v State of New York, 7 NY3d 159, 168 [2006]; see Verizon N.Y., Inc. v Supervisor of Town of Hempstead, 189 AD3d 1658, 1659 [2d Dept 2020], lv denied 39 NY3d 909 [2023]).
In support of its motion for a lower interest rate, filed nearly a year after the jury issued its verdict, defendant submitted the affidavit of an economics professor who compiled various investment portfolios consisting of three exchange-traded funds (hereinafter ETFs), which mimic common stock indices, and US Treasury Bills with maturity dates of one year or less. To represent varying investment risk approaches, the professor used different ratios of ETFs to US Treasury Bills. He explained that, due to a decline in the market since the verdict, each of the compiled portfolios resulted in a negative return rate; only the US Treasury Bills earned a profit, where utilizing a one-year maturity date yielded the highest return rate at 0.31%. The professor's reliance on the performance of the chosen ETFs and US Treasury Bills, however, is not representative of "a full spectrum of investments — both public and private" (Denio v State of New York, 7 NY3d at 167). As defendant failed to establish, by substantial evidence, that an interest rate lower than 9% was reasonable, the burden never shifted to plaintiff (see Verizon N.Y., Inc. v Supervisor of Town of Hempstead, 189 AD3d at 1660). Consequently, we must reverse the order and judgment applying the lower interest rate and remand this matter for Supreme Court to issue a judgment applying the presumptively reasonable statutory interest rate of 9%.
The parties' [*7]remaining contentions, to the extent they are properly before us, have either been rendered academic by our determinations or lack merit.
Garry, P.J., Egan Jr., Pritzker and Mackey, JJ., concur.
ORDERED that the order entered May 31, 2022 is affirmed, without costs.
ORDERED that the order entered April 4, 2023 is reversed, on the law, without costs; defendant's motion to reduce interest rate denied; and prejudgment and postjudgment interest is set at a rate of 9% per annum.
ORDERED that the judgment entered May 24, 2023 is modified, on the law, without costs, by reversing so much thereof as applied an interest rate of 0.31% and calculated sums due based thereon; interest shall be set and applied at a rate of 9% per annum; matter remitted to the Supreme Court for entry of a judgment not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: Plaintiff's claims against the owner of a nearby factory are not at issue on this appeal.

Footnote 2: One of these companions passed away prior to the trial, but the parties read portions of his deposition transcript into the record.